L. A. HASSENCLEVER AND OTHERS, Appellees, v. E. W. ROMKEY AND THE TOWNSHIP TRUSTEES OF UNION TOWNSHIP, DES MOINES COUNTY, IOWA, Appellants.

**Cemeteries:** RIGHTS OF LOT OWNERS. One selecting a family burial
1 lot from an unplatted tract of land dedicated by the owner to cemetery purposes acquires the right to protect and care for the graves of his dead and to prevent trespass thereon.

**Cemeteries:** DISPUTED LOT LINES: SETTLEMENT BY TOWNSHIP TRUS-
2 TEES: JURISDICTION. Township trustees. to whom an owner conveyed land for cemetery purposes have no jurisdiction to determine a disputed boundary line between adjacent lot owners, holding simply by right of selection and burial therein, where notice of the meeting at which action was taken was not given the parties.

*Appeal from Des Moines District Court.*— HON. W. S. WITHROW, Judge.

TUESDAY, MARCH 5, 1907.

THE opinion states the material facts.— *Affirmed.*

*Seerley & Clark,* for appellants.

*Blake & Wilson,* for appellees.

WEAVER, C. J.— In the year 1857 one Robert Avery, owning a tract of land in Union township, Des Moines county, Iowa, dedicated a portion thereof to the public for use as a cemetery, and evidenced such fact by making and recording a deed of the land so designated to Union township. Since that date the deeded tract has been used as a cemetery. It was never platted into lots or blocks, nor have any distinct parts or parcels thereof ever been sold or conveyed to persons who have buried their dead therein. The custom usually observed has been for each person desiring to do so to select a spot or place not already utilized and mark thereon by stakes or stones the bounds of a family burial plat, and thereafter the exclusive right of such person to the ground so chosen has ordinarily been respected by others. In most cases an open space or pathway of one foot or more in width has been left between the adjacent plats.

About the year 1873 Alfred Hassenclever, husband of the original plaintiff herein, selected a burial plat in this cemetery, in which about that time a member of his family was interred. In 1877 or 1878 one Romkey, father of the defendant of that name, seems to have taken a plat or lot next north from that of the Hassenclever family and buried a child therein. A year or two later said Romkey himself died, and was also buried there. Later, and several years before the beginning of this controversy, the surviving Romkeys, or some of them, put up an iron fence inclosing that part of the ground where members of their family were buried, leaving a space several feet in width between the south fence and the north side of the grave on the Hassenclever plat. In the year 1900 the wife of E. W. Romkey died, and her body was buried south of the iron fence in the open space above mentioned, leaving a space between this

grave and the grave on the Hassenclever plat of about eighteen inches in width. A dispute afterward arose between the parties as to the correct line between the lots. The appellants insisted that their lot extended south to the north line of the Hassenclever grave, while the appellees claimed that their lot extended north to or near the iron fence, and that the grave of Mrs. E. W. Romkey had been placed in the common pathway or space between said plats, if indeed it did not extend over upon their lot. This claim they undertook to assert by putting up a fence or barrier of some kind quite close to the monument at the grave of Mrs. Romkey. In the year 1903 the appellants complained to the township trustees, who met to consider the matter. The record of that meeting, as preserved by the clerk, is in the following language: "Union Township, December 12, 1903. Township Trustees T. H. Pfeiff, Henry Magel and Nick Helt met Mrs. A. Hassenclever and E. W. Romkey at the Shiloh Cemetery to try and settle the line between Mrs. A. Hassenclever and E. W. Romkey; Mrs. Hassenclever would not try to reason or hear to anything and went away; the trustees wanted time to think and see what power they had; they ordered the clerk to get a copy of the deed, E. W. Romkey to pay the costs; and they adjourned." Another meeting of the trustees was held some three months later, of which the township clerk's record is as follows: "They decided that Mrs. Hassenclever had her stones over on E. W. Romkey's lot, and that they told the clerk to leave it to E. W. Romkey, if he wanted her ordered to move soon, or wait for her to start suit; E. W. Romkey ordered the clerk to order her to move as soon as the frost would permit, so I sent her notice February 23, 1904." It does not appear that any notice of this latter meeting was given Mrs. Hassenclever, or that she attended its session. Soon thereafter she instituted this action in equity to have the division established and to enjoin interference with her possession up to the line claimed by her. Her claim was resisted by the appellants, who sought to

establish the division line as coinciding with the north line
of the Hassenclever grave.   The trial court, after a pro-
longed trial, found and decreed the line to be twelve inches
south of the Romkey monument and about six inches north
of the grave on the Hassenclever lot, and taxed to each party
the costs of its own witnesses and one-half of all the other
taxable costs.   The defendants alone appeal.

, Two questions are argued by the counsel for the ap-
pellant:   First, the fact question as to the location of the
line; and, second, the legal question as to the effect of the
order by the township trustees.

As to the facts involved in this somewhat unseemly
quarrel, we shall not take the time to recite the evidence.
It is to be noted that neither party has any title, in the usual

1. CEMETERIES: sense of that word, to their respective burial
rights of lot lots.   As members of the public they have the
owners. right of burial there, and that right doubtless
carries with it the right to protect and care for the graves
of their dead and to prevent intrusion or trespass thereon.
The exercise of this right would generally necessitate the use
of a reasonable margin of ground adjacent to the graves, and
the recognized custom in that regard would ordinarily be
respected by the courts.   There is some confusion in the
evidence as to the marks by which the parties claim to iden-
tify the lines of their respective holdings, and, as the con-
clusion reached by the trial court does no apparent injustice
to either litigant, we are not disposed to inquire very critic-
ally whether it varies a few inches from the marks set up
originally by the appellants.   The appellee's lot was the first
taken, and, if Romkey thereafter so staked out his lot as to
crowd unreasonably upon the former, we see no reason why
the court should not order the division to be made on a line
which will accommodate both parties so far as that is possible
without compelling the disinterment of the dead.   This we
think was accomplished.   Of the space between the nearest
graves on either side, two-thirds is accorded to the appel-

lants, and one-third to the appellees. It is unfortunate, perhaps, that the space to be divided was not greater; but, even as it is, when these hostile parties are all finally gathered into the permanent occupancy of their respective burial plats, an earthen wall of very moderate thickness ought to be sufficient to insure peace between them.

The action of the township trustees we do not regard as having any controlling effect on the rights of the parties. Assuming, as we may, for the purposes of the case, that the

2. CEMETERIES: disputed lot lines: settlement by township trustees: jurisdiction.

subject-matter of the dispute was within the jurisdiction of the trustees, it appears that at their meeting in December, 1903, no order of any kind was made except to direct the clerk to get a copy of the deed to the cemetery, and then, saying they "wanted time to think and see what power they had," the meeting was adjourned without day. Any order made in favor of the appellants at a meeting held three months later, without notice to the other party, was of necessity void for want of jurisdiction over the latter.

The decree appealed from effects substantial justice between the parties, and it is *affirmed.*