BOTTOMLY, ATTORNEY GENERAL, PLAINTIFF, v.
MEAGHER COUNTY ET AL., DEFENDANTS.
(No. 8387.)

(Submitted January 5, 1943. Decided February 5, 1943.)

[133 Pac. (2d) 770.]

222

*Mr. R. V. Bottomly,* Attorney General, and *Mr. M. J. Thomas,* Special Assistant Attorney General, for Plaintiff, submitted an original and a reply brief; and argued the cause orally.

*Messrs. Toomey, McFarland & Hall, Mr. Edmond G. Toomey, and Mr. J. M. Higgins,* County Attorney of Meagher County, submitted an original and a reply brief; *Mr. Edgar M. Hall* argued the cause orally.

*Mr. Ralph J. Anderson, amicus curiae,* submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

This is a proceeding for declaratory judgment. Original jurisdiction was accepted by this court because the final judgment might necessitate further enactments at the legislative session now convened, trial in the district court and appeal to and decision by this court not being possible in time, and such

original jurisdiction therefore being necessary and proper to the complete exercise of this court's appellate jurisdiction. (Constitution of Montana, Article VIII, section 3.)

The attorney general's complaint alleges that there is in process of administration in the district court of Meagher county the estate of William Gaspar who died in 1940, leaving a surviving brother residing in said county and a surviving brother and sister residents and citizens of the country of Roumania; that it has not been proven to the said court that at the time of Gaspar's death the said country would permit the transfer to an heir, devisee or legatee residing in the United States of property left by a deceased person in Roumania; that under Chapter 104 of the 1939 Session Laws the interests of the said brother and sister, residents and citizens of Roumania, will escheat unless such reciprocal law of that country is shown, but that under section 4 of that Chapter the proceeds would go to the general fund of Meagher county, whereas under Article XI, section 2 of the Constitution of Montana it should go to the public school fund of the state; that both Meagher county and the state are claiming the interests of the non-resident brother and sister under the said statute and constitutional provision, respectively, and that the Alien Property Custodian of the United States also claims them as the property of alien enemies; that other estates in process of administration in other counties are similarly situated; that it is necessary to determine the status of the state of Montana under the constitutional and statutory provisions in question.

It is apparent that if the statute in question is valid in granting the interests in question to Meagher county rather than to the public school fund of the state, the county attorney, will have the duty of opposing the claims of the non-resident brother and sister and of the Alien Property Custodian. The attorney general's legal duty is therefore affected by the statute so as to entitle him to seek a declaratory judgment under section 9835.2, Revised Codes.

The plaintiff contends that Chapter 104 provides for an

escheat; that the constitutional provision is mandatory and exclusive; and that the proceeds of the shares of heirs barred by the Chapter must go to the public school fund of the state. The defendants, Meagher county and the county commissioners thereof, contend that Chapter 104 does not provide an escheat but merely modifies the succession statutes under the circumstances stated, so that the county becomes the heir in place of the non-resident aliens. *Amicus curiae* contends that the Chapter is invalid in attempting to escheat the alien's share to the county, since all escheats must go to the public school fund of the state, but that the Chapter is a valid amendment of the succession statutes in barring the alien claimants as heirs under the conditions stated, and that it leaves Tony Gaspar, the surviving brother residing in Montana, as the only qualified heir. Thus the plaintiff regards Chapter 104 as an escheat statute; the defendants regard it as a succession statute; and *amicus curiae* regards it as an escheat statute so far as the county is concerned, and a succession statute so far as the state is concerned, thus barring both if there is any resident heir competent to take. Necessarily defendants claim, and *amicus curiae* admits, that the clear intent of Chapter 104 is to divert the interests of the non-resident aliens concerned to the general funds of the counties for the benefit of the public; for unless that intent is both present and valid, defendant county can take nothing; and unless that intent is both present and invalid, the qualified heir to whom *amicus curiae* refers can take nothing by reason of the Chapter.

Section 2 of Article XI of the Constitution of Montana provides: "The public school fund of the state shall consist of the proceeds of * * * all estates, or distributive shares of estates that may escheat to the state; * * *."

The parties have argued the question whether this provision is self-executing. However, that is immaterial for the purpose of this action, since the binding effect of constitutional provisions on the legislature is not dependent upon whether they are self-executing. Section 29 of Article III of the state

Constitution provides: "The provisions of this constitution are mandatory and prohibitory, unless by express words they are declared to be otherwise."

Therefore the legislature has no power to divert escheated estates or escheated distributive shares of estates from the state public school fund to other uses, whatever power it may have to provide when and how escheats shall occur and by what machinery they shall pass. The issue before us is simply whether Chapter 104 provides for escheats; if it does, the diversion of those escheats from the public school fund of the state to the general funds of counties is beyond the power of the legislature, whether or not the constitutional provision is self-executing.

Before proceeding to an analysis of Chapter 104 we shall review the general statutes relative to escheats. Sections 27 and 28 and subdivision 8 of section 7073, Revised Codes, are provisions of substantive law and are as follows:

"The original and ultimate right of all property, real and personal, within the jurisdiction of this state, and not belonging to the United States, is in the people of the state." (Section 27.)

"Whenever the title to any property fails for want of heirs or next of kin, it reverts to the state. All property within the limits of this state, which does not belong to any person, belongs to the state." (Section 28.)

. "If the decedent leaves no husband, wife, or kindred, the estate escheats to the state." (Subdivision 8 of section 7073.)

A number of code sections contain further substantive law and provide machinery relative to escheats. Sections 7088, 7089, 7090 and 7091 provide:

"Resident aliens may take in all cases by succession as citizens; and no person capable of succeeding under the provisions of this chapter is precluded from such succession by reason of the alienage of any relative; but no non-resident foreigner can take by succession, unless he appears and claims such succession

within five years after the death of the decedent to whom he claims succession.'' (Section 7088.)

''When succession is not claimed as provided in the preceding section, the district court, on information, must direct the attorney general to reduce the property to his or the possession of the state, or to cause the same to be sold, and the same or the proceeds thereof to be deposited in the state treasury for the benefit of such non-resident alien, or his legal representative, to be paid to him whenever, within five years after such deposit, proof to the satisfaction of the state auditor and treasurer is produced that he is entitled to succeed thereto.'' (Section 7089.)

''When so claimed, the evidence and the joint order of the auditor and treasurer must be filed by the treasurer as his voucher, and the property delivered or the proceeds paid to the claimant on filing his receipt therefor. If no one succeeds to the estate or the proceeds, as herein provided, the property of the decedent devolves and escheats to the state, and is placed by the state treasurer to the credit of the general fund.'' (Section 7090.)

''Real property passing to the state under the last section, whether held by the state or its officers, is subject to the same charges and trusts to which it would have been subject if it had passed by succession, and is also subject to all the provisions of the Code of Civil Procedure in relation to escheated estates.'' (Section 7091.)

Section 10346 provides that the court may appoint an agent to receive the distributive shares of any non-resident having no agent for the purpose.

Section 10348 provides that if it appears to be for the benefit of those interested, personal property remaining unclaimed in such agent's hands for a year may be sold under court order and the net proceeds of sale paid into the state treasury.

Section 10351 provides that the court must inquire into any claim made for such property, and being satisfied of the claimant's right, must grant him a certificate upon presentation

of which the state auditor must draw a warrant on the state treasurer for the amount.

Sections 9959, 9960 and 9961, Revised Codes, make it the duty of the attorney general to enforce, and specify the procedure by which he shall enforce, the state's right to escheated real property.

Section 206 extends the attorney general's duty under those sections, and makes the procedure therein contained applicable, to personal property as well as real estate.

Section 9962 provides for petitions by claimants not parties or privies to the action, within twenty years after judgment, and for the adjudication thereof.

Thus the legislature has provided the machinery to give effect to the constitutional provision concerning escheats, which further makes it unnecessary to consider whether the latter is self-executing.

Before examining the provisions of Chapter 104 it is well to note that section 25 of Article III of the state Constitution, which is referred to in section 2 of Chapter 104, provides: "Aliens and denizens shall have the same right as citizens to acquire, purchase, possess, enjoy, convey, transmit, and inherit mines and mining property, and milling, reduction, concentrating, and other works, and real property necessary for or connected with the business of mining and treating ores and minerals: provided, that nothing herein contained shall be construed to infringe upon the authority of the United States to provide for the sale or disposition of its mineral and other public lands."

Sections 2, 3, 4 and 5 of the Act in question here, Chapter 104 of the Laws of 1939, provide as follows:

"No person shall receive money or property, save and except mining property, as provided in Section twenty-five, Article III, of the Constitution of the State of Montana, as an heir, devisee and/or legatee of a deceased person leaving an estate or portion thereof in the State of Montana, if such heir, devisee and/or legatee, at the time of the death of said deceased person,

is not a citizen of the United States and is a resident of a foreign country at the time of the death of said intestate or testator, unless, reciprocally, the foreign country in question would permit the transfer to an heir, devisee and/or legatee residing in the United States, of property left by a deceased person in said foreign country." (Section 2.)

"In any estate where money or property would have vested in any person but for the provisions of Section one (1) of this Act, it shall be the duty of the executor or administrator thereof to set forth the name and residence of such person in his petition for letters and to do likewise in his petition for distribution, in which, also, he shall designate and describe the amount of money and/or property which, but for the provisions of this Act, would have passed to said heir, legatee or devisee. Upon the final settlement of said estate upon order of the court it shall be the duty of said executor or administrator to deliver all money and/or property affected by such order of court to the county wherein it is situated, in the case of real property by delivering a certified copy of said order to the clerk and recorder of such county, whose duty it shall be to record the same and, in the case of money and/or other personal property, by delivering the same to the treasurer of said county. All property not theretofore converted into cash shall be sold by the county in the same manner as is property sold for taxes, provided that, in the case of real property the deed of said county shall make reference to the book and page of county records wherein is recorded said order of court transferring said real property to said county." (Section 3.)

"All money, including all money realized from the sale or sales of property delivered to the county by an executor or administrator under the provisions of this act, immediately upon its receipt by the county treasurer, shall be placed in the county general fund." (Section 4.)

"If any clause, sentence, paragraph, section or any part of this Act shall be declared and adjudged to be invalid and/or unconstitutional, such invalidity or unconstitutionality shall

not affect, impair, invalidate or nullify the remainder of this Act.'' (Section 5.)

Chapter 104, like sections 7088, 7089, 7090 and 7091, supra, which were enacted in 1877, imposes a limitation on the right of certain non-resident aliens, although section 7088 is merely a statute of limitations (*In re Colbert's Estate,* 44 Mont. 259, 119 Pac. 791), whereas section 2 of Chapter 104 constitutes substantive law. Both Acts provide for the seizure of the applicable interests of non-resident aliens for public purposes, section 4 of the 1939 Act assuming to place them in the county general fund, and section 7090 enacted as section 555 of the 1877 Act (as amended in 1879) assuming to place them in the general fund of the state (then the territory). Section 7090 expressly provides that the property in question ''escheats to the state,'' and its provision that the proceeds shall be placed in the state general fund is obviously contrary to the constitutional provision, is clearly invalid, and has by executive usage without judicial declaration properly been disregarded.

The provisions of sections 2 and 4 diverting the interest to counties are equally unconstitutional if the 1939 Act, like the 1877 Act, brings about an escheat. Each Act disqualifies certain heirs, but neither substitutes others, nor leaves the property to devolve to other heirs of the same or more remote degree. Each couples the disqualification with the diversion of the shares for public use; it not only disqualifies the heir in question but takes the estate or his interest in it out of the succession Acts entirely.

Defendants argue that where applicable the Act merely makes the county an heir in place of the disqualified non-resident aliens. However the word ''heirs'' is a legal term expressing relation of persons to a deceased person (*In re Nebe's Estate,* 155 Misc. 392, 279 N. Y. Supp. 622) and an heir is one entitled under the law to succeed to property by right of relationship or descent (*Prudential Ins. Co. of America* v. *Karr,* 241 Ala. 525, 3 So. (2d) 409; *Leeper* v. *Leeper,* 347 Mo. 442, 147 S. W. (2d) 660, 133 A. L. R. 586). Obviously a county

cannot have such relationship to a deceased person. Counties are merely political subdivisions of the state for governmental purposes and are state governmental agencies. (*Church* v. *Lincoln County,* 100 Mont. 238, 46 Pac. (2d) 681.) Clearly the intent of the legislature was not to substitute counties as heirs, but to cause the heirs' interests to escheat, and to turn them over to the counties as governmental agencies of the state for the public benefit. The legislature has power to provide for escheats, solely because it represents the sovereignty of the state and is dealing with the state's rights to the reversion of property not permitted under the statutes to go to heirs; and the legislature may not exercise that power contrary to the people's command directly expressed in the Constitution.

Escheat constitutes an obstruction in the course of descent and is an attribute of sovereignty. (30 C. J. S., Escheat, p. 1164, sec. 1; 19 Am. Jur. 382, Escheat, sec. 3.) Chapter 104 deals with the state's right to escheats and is invalid in so far as it conflicts with the Constitution.

Under either the 1877 Act or the 1939 Act in question, if all of the heirs are disqualified the entire estate of the decedent is taken; under either Act, if only part of the heirs are disqualified only their interests are taken. Thus the 1877 Act effectively disposes of the argument of defendants and *amicus curiae* that at the adoption of the Constitution in 1889 the only known escheat was that of an entire estate. It is answered also by the fact that the constitutional provision in question speaks of ''estates, or *distributive shares* of estates that may escheat to the state.''

It follows that the intent expressed in sections 3 and 4 of Chapter 104, like that expressed in section 7090 (since the adoption of the state Constitution), to divert the escheated interests in question to other than the public school fund of the state cannot be given effect.

As noted above, Chapter 104 includes a severability clause (section 5), and the entire Act must be given effect in so far as it does not contravene constitutional provisions. Certainly

no legislative intent is expressed that the escheat shall not stand if it must be devoted to the constitutional purpose. That intent, if it exists, can for all future purposes be given effect by the repeal of the Chapter.

The effect of section 2 and the first sentence of section 3 is absolutely to deprive the designated aliens of the distributive interests which would otherwise have vested in them. Sections 3 and 4 as a whole not only provide where those interests are to vest (as defendants contend and *amicus curiae* admits), but also supply the machinery by which they are to pass.

Although sections 3 and 4 were obviously intended to carry out the purpose to divert the interests and proceeds in question to the county general funds, nevertheless, so far as their mere procedural character is concerned, they do not contravene the constitutional provision. Nor, considered as merely procedural matters, do they necessarily conflict with the other statutory machinery outlined above for the handling of escheats, and it seems clear that the attorney general has power under sections 9959, 9960, 9961, 206 and the other sections named, to assert and protect the rights of the state. Certainly those provisions make it his duty to enforce the constitutional escheats to the public school fund, even against property which, under section 3 of Chapter 104, has been "delivered" to the county, and against the money which, under section 4 of that Chapter, has been "placed in the county general fund." It is a legislative question whether the provisions of sections 3 and 4 should be amended or repealed to clarify or simplify the procedure.

As for alien heirs, since their rights depend upon the existence of the reciprocal permission required of their country by section 2 of Chapter 104, the burden is clearly upon them to prove its existence. (*In re Braun's Estate*, 161 Or. 503, 90 Pac. (2d) 484.) It must be understood, of course, that the existence, identity or respective rights of the heirs or next of kin of William Gaspar, deceased, are not before us for adjudication, but must be determined in connection with the probate proceedings.

232

It is our conclusion that the provisions of sections 3 and 4 of Chapter 104 are unconstitutional in so far as they purport to divert escheats to county general funds, but that the Act does not otherwise contravene section 2 of Article XI of the Constitution, and that estates and interests in estates escheating under the Chapter are governed by that constitutional provision and by the statutes mentioned above. Let judgment be rendered accordingly.

ASSOCIATE JUSTICES ERICKSON, MORRIS and ANDERSON, and HON. BEN. HARWOOD, District Judge, sitting in place of MR. JUSTICE ADAIR, disqualified, concur.