## In re NIELSEN'S ESTATE
No. 8554
Submitted December 12, 1945. Decided February 5, 1945.
165 Pac. (2d) 792

Mr. R. V. Bottomly, Atty. Gen., Mr. Fred Lay, First Asst. Atty. Gen., and Mr. Myles J. Thomas, Sp. Asst. Atty. Gen., for appellant.

Mr. T. R. Delaney, of Polson, for respondent.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

The State appeals from a decree of final distribution of the estate of Niels P. Nielsen, a resident of Lake County, Montana, who died intestate therein on December 2, 1942, leaving property in Montana.

On August 6, 1943, the administrator filed his first and final account showing a cash residue of $4,011.13, and his petition seeking a decree for the final distribution thereof in equal shares to a brother, Niels H. Nielsen, residing in the state of Michigan, and two sisters, Kristiane Kristensen and Katrine M. Kristensen, both residing in Denmark. The statement of the brother was filed agreeing that the two non-resident sisters are lawful heirs of the deceased and lawfully entitled to share in his estate, in accordance with section 10327, Revised Codes. On August 17, 1943, the court approved the final account, but postponed the hearing upon the petition for final distribution.

On September 4, 1943, the state of Montana filed objections to the petition for distribution, claiming a right to two-thirds of the residue as against the two alleged non-resident heirs under Chapter 104, Laws of 1939. The court set the matter for hearing on October 13, 1943, and ordered notice thereof to be given to the Alien Property Custodian.

At the conclusion of the hearing on October 13, 1943, the court rendered its decree preceded by a recital that the Alien Property Custodian had announced to the court that he was not interested in the estate, and that it appeared to the court that the only heirs ''who might be entitled to share'' therein were the brother residing in Michigan and the two sisters residing in Denmark, but that the only one to whom distribution of the estate could then ''be effectively made'' was the brother residing in Michigan. The decree therefore provided that one-third of the residue be paid over to the brother, ''and that the remaining 2/3 be turned over to the County Treasurer of Lake County, Montana with instructions to transmit the same to the State Treasurer of Montana hereby specifically reserving for

the sisters, residents and citizens of Denmark any and all rights which they do hereafter claim to this money.'' Thus the decree did not attempt finally to adjudicate any rights as between the non-resident next of kin and the State of Montana. The administrator delayed payment of the money pending further proceedings to determine the distributive rights.

On January 18, 1944, R. Baumann, Consul General of the Royal Danish Consulate at Chicago, filed his petition on behalf of the two sisters resident in Denmark, making claim for them as heirs, alleging the impossibility of their then making claim on their own behalf, and containing a showing of his lawful right to represent them, and of the absence of any discrimination under the laws of Denmark between Danish subjects and aliens, whether resident or non-resident, with regard to inheritance of real and personal property in that country. The prayer was that the court adjudicate and declare the rights of all persons to the estate. With his petition the Consul General filed a motion ''for the further order of the court amending and modifying'' its order of distribution made on October 13, 1943, upon the grounds that the order specifically reserved for the two sisters any and all rights which they might have, that neither court nor counsel were then fully advised of the sisters' rights, or of the petitioner's right to represent them, or of the laws and customs of Denmark, and ''that the said funds to which these sisters are entitled should properly and legally be in petitioner's custody and control for the duration of this war, deposited for safe keeping in trust for said Danish Nationals as provided in petitioner's license from the United States Treasury department granted under Executive Order.''

A hearing upon the petition and motion was had on February 15, 1944, and evidence was heard, but the matter was continued further in order to permit the United States District Attorney's office to file the petition of the Alien Property Custodian for the delivery to him of the distributive shares of the alleged alien heirs.

All these three matters were considered at a further hearing

on May 9, 1944. At that time the Alien Property Custodian waived any right as against the Consul General and joined him in urging the rights of the alien sisters and in asking that their distributive shares be paid to the Consul General.

Subsequently, on May 19, 1944, the court made a finding that the brother and the two sisters were the heirs of the deceased; upon the question raised by the State under Chapter 104, supra, the court's finding was "that the Kingdom of Denmark has always and does now permit the transfer to an heir, devisee or legatee residing in the United States of any property left by any deceased person in Denmark; that the occupation of Denmark by Germany, a nation now at war with the United States, was done for purely military purposes, and that in such occupation our enemy, Germany, has not to this time interfered with the operation of the laws and of the courts of Denmark in handling their purely local affairs; that the only impediment resulting from such military occupation is that there is no chance of communication in any way between citizens of the United States and those of Denmark, but as soon as such military occupation ceases, the same opportunity of communication between the United States and Denmark will be resumed as existed before such occupation, and the funds belonging to such Danish heirs can then be transmitted to them; that Denmark is not an enemy country of the United States, but only an enemy-occupied country * * *".

Accordingly the court rendered its conclusions and decree that the state of Montana "is not entitled to receive" any part of the estate "for escheat or forfeit," that the two sisters resident in Denmark are heirs and entitled to inherit and receive the funds remaining in the hands of the administrator after payment of costs, and that the same be delivered to R. Baumann, the Danish consul, on his furnishing the administrator proof of the present consent of the United States Treasury Department to such transfer to him as consul.

The state's appeal raises the question whether the findings and decree are sustained by the evidence. Chapter 104,

Laws of 1939, was enacted prior to the death of the intestate and therefore governs the vesting of the rights of his heirs. Section 2 of that Chapter provides: "No person shall receive money or property, * * * as an heir, devisee and/or legatee of a deceased person leaving an estate or portion thereof in the State of Montana, if such heir, devisee and/or legatee, at the time of the death of said deceased person, is not a citizen of the United States and is a resident of a foreign country at the time of the death of said intestate or testator, unless, reciprocally, the foreign country in question would permit the transfer to an heir, devisee and/or legatee residing in the United States, of property left by a deceased person in said foreign country." The remainder of the Act purports to deliver to the general fund of the county all estate property which but for the Act would have vested in the non-resident alien next of kin; but that part of the Act is in violation of section 2 of Article XI of the Constitution of Montana, which places in the state public school fund all escheated estates and escheated interests in estates. Bottomly v. Meagher County, 114 Mont. 220, 133 Pac. (2d) 770.

It was shown by the deposition of Mr. Povl Bang-Jensen, legal counselor of the Danish Legation at Washington, D. C., a member of the bar of Denmark and shown to be learned in the law of that nation, that on December 2, 1942, there was no written statute nor decision of a court of that nation which expressly "either permitted or prohibited the transfer to heirs, devisees and/or legatees residing in the United States of property left by deceased persons in Denmark." He testified further in his deposition that the written law of Denmark did not then prohibit, and that the unwritten law of Denmark permitted such transfer, and that heirs, devisees and legatees residing in the United States enjoyed the same inheritance rights to property left by deceased persons in Denmark as were enjoyed by resident citizens thereof. On cross-examination he testified: "As I have explained, there is no Danish statute which directly states that residents of the United States have the same right of inheritance as Danish citizens or residents of Denmark; I have also ex-

plained that there are undoubtedly no written opinions of Danish ·courts expressly stating that this is the case, but that it is implied in the Danish courts' handling of thousands of estates. To make myself more clear, I may perhaps add that the idea that residents of the United States should have an inferior position to citizens or residents of Denmark regarding their rights of inheritance in the estates in Denmark, is so alien to the Danish legal mind and the Danish legal system, that one could just as well search for opinions by Danish courts or Danish statutes stating, say, that blind or red-haired people have full right of inheritance. * * * There are, of course, as mentioned, thousands of decisions by Danish Probate Courts by which the rights of heirs, devisees, or legatees residing in the United States to inherit property left by a deceased person in Denmark is (are) proven indirectly by the fact that the Danish Probate Courts have distributed an estate to heirs residing in the United States.''

Annexed to the deposition ·as an exhibit were photographic reproductions, certified by the Library of Congress, of three printed pages from a treatise on the private international law of Denmark written by A. O. Borum and Karsten Meyer, published in the French language at Paris, France, in 1930 by A. de Lapradelle, in Volume 6 of Repertoire de Droit International. The witness testified that A. O. Borum was professor of law at the University of Copenhagen and the outstanding living authority on the Danish law of inheritance, the author of many treatises on the law of Denmark, and recognized throughout the world as an authority thereon; that Karsten Meyer was a well-known attorney, practicing before the courts of Denmark, of the highest professional and personal repute, and learned and skilled in the laws of Denmark. The witness translated from page 215 of that book, which was shown in the exhibit, as follows: ''Aliens, in general, possess the same civil rights as the nationals. They have the same rights to succession as the natives.''

Annexed as another exhibit is a similarly certified photographic reproduction of three pages from· a book entitled ''Den

Danske Arveret'' by Professor Viggo Bentzon, written in the Danish language and published at Copenhagen in 1930. The witness translated the title as ''Inheritance Law of Denmark'' and testified that the book was the text book on that subject used in the University of Copenhagen, the only institution in Denmark authorized to confer law degrees. Witness translated from page 15 of this book, which was shown in the exhibit, the statement: ''Foreigners have the same right of inheritance as citizens.''

The witness testified further that in his experience as a member of the bar of Denmark the right of a non-resident alien to inherit property there had never been questioned in any judicial proceeding and that it had not, to his knowledge, ever been questioned by any decision of the Danish court or in any treatise of a learned man, and that it would undoubtedly have come to his attention had any such question been raised. He testified further that the law of Denmark, as observed and administered in its courts, invariably permitted the transfer of property left by deceased persons in that nation to heirs, devisees and legatees resident in the United States, that throughout December, 1942, such persons residing within the United States had the same right to inherit property left by deceased persons in Denmark as citizens and residents of that nation, and that the Danish law upon that point had not since been changed.

On cross-examination he testified that in his practice of law in Denmark he had handled at least five estates of Danish citizens whose heirs resided in the United States and that he knew of hundreds of similar cases. He testified further: ''Denmark has been occupied by Germany since April 9, 1940, but Germany has for some reason made a point of stating that she still considers Denmark a sovereign state, occupied for its own 'protection,' and not a part of German territory. The Germans have interfered, and often brutally, in all such matters in which they have a military or other more direct interest, for instance, radio, press, industry, et cetera, but there has been no interference

whatsoever with Danish probate law or other laws of a private nature. The Germans are fortunately too busy for that.''

The State objected to the deposition but the only substantial ground stated was that the order of October 13, 1943, had determined the rights of the foreign claimants, which as above noted it did not do. Specific objections were made to various interrogatories, but we have examined each of the objections and find them not tenable.

Appellant contends that as unwritten law is defined by Anderson's Dictionary of Law, p. 604, as ''founded upon immemorial universal usage, whereof judicial decisions are the evidence,'' it must be shown to have been the subject of express judicial decisions before it can be proven. However, section 10549, Revised Codes, provides: ''Unwritten law is the law not promulgated and recorded, as mentioned in section 10546, but which is, nevertheless, observed and administered in the courts of the country. It has no certain repository, but is collected from the reports of the decisions of the courts and treatises of learned men.''

In other words, it need not be expressly evidenced in decisions but may be ''collected'', ''gathered'', or, as the witness said, ''implied'' from the decisions. It follows that the existence of decisions permitting and the absence of decisions denying the right of inheritance by non-residents of Denmark is evidence of the law of that country in the absence of written statutory law, even though the exact principle is not shown to have been expressly declared in so many words.

In contrast with the provisions of section 10549, section 10552 fails to mention ''treatises of learned men'' as proof of the unwritten law of a foreign country; it provides: ''The oral testimony of witnesses skilled therein is admissible as evidence of the unwritten law of a sister state or foreign country, as are also printed and published books of reports of decisions of the courts of such state or country, or proved to be commonly admitted in such courts.''

Since the latter section merely specifies that certain evidence

is admissible without specifying the inadmissibility of the "treatises of learned men," which section 10549 states as one of the sources from which unwritten law is collected, we conclude that the two sections are to be read together, and that the exhibits and the deponent's testimony concerning them were admissible. No objection was raised to the use of photostatic copies in lieu of the books themselves.

There was ample competent and uncontradicted evidence to sustain the court's findings and conclusions as to the reciprocal right of American citizens to inherit property under the law of Denmark, and no evidence appears in the record to the contrary.

Other questions are attempted to be raised in which the appellant has no interest, since its claim under Chapter 104, Laws of 1939, has failed. The decree is affirmed.

Associate Justices Morris, Adair, Angstman and Cheadle concur.