269 P.2d 1085 (1954)
In re STOIAN'S ESTATE.
VONICA
v.
STOIAN'S UNKNOWN FOREIGN AND NON-RESIDENT HEIRS.
No. 9215.
Supreme Court of Montana.
Decided April 30, 1954.
As Amended on Denial of Rehearing May 19, 1954.
Ralph J. Anderson, and Stanley P. Sorenson, Helena, for appellant.
M.K. Daniels, Joseph A. McElwain, Deer Lodge, for respondents.
Arnold H. Olsen, Atty. Gen., Joseph J. McCaffery, Jr., Sp. Asst. Atty. Gen., amici curiae.
ANDERSON, Justice.
This is an appeal by the plaintiff from an order determining heirship, made and entered on the 18th day of February 1952, in the district court of Powell County, Montana. Eli Stoian died on or about the 1st day of January 1949, leaving no will and leaving personal property in Montana valued in excess of $10,000. The plaintiff and appellant, Dan D. Vonica, petitioned the court for letters of administration alleging himself to be the next of kin and heir at law of the deceased, and on the 17th day of January 1949, plaintiff and appellant was duly appointed administrator and qualified as such and since that date has been acting as such administrator. On the 13th day of January 1949, an order was made by the district judge appointing M.K. Daniels and Joseph A. McElwain to represent the unknown heirs of the decedent, and all heirs, legatees and devisees of the decedent who reside out of the State of Montana.
On August 29, 1949, the representatives of the foreign heirs filed a petition to determine heirship. A motion was made by the plaintiff to quash the petition, and it was noticed for hearing and at a later date an order denying the motion was made by the lower court. On the 11th day of January 1950, Dan D. Vonica, the appellant herein, made his appearance in the matter having to do with the petition to determine heirship, and on the 22nd day of May 1950, the default of all unknown and nonresident heirs was duly entered and filed. On the same day the appellant filed his complaint alleging that he was a second cousin of the decedent and as such was the sole heir and entitled to the whole of the property and estate of the decedent, praying that the court so determine. On the 29th day of May 1950, the attorneys for the unknown nonresident heirs filed an answer to appellant's complaint alleging that the decedent *1086 was survived by certain individuals, namely brothers, nephews and nieces, who were residents and citizens of Rumania, and asked the court that an order or decree be entered adjudging, determining and decreeing that these persons in Rumania be heirs at law and next of kin of decedent. On the 5th day of June 1950, the appellant filed a reply to the answer of the attorneys for the unknown, nonresident heirs and in that reply, among other things, it was asked the so-called answer of the attorneys for the unknown, nonresident heirs be stricken.
The cause came on for hearing before the court on the 27th day of June 1950. The plaintiff and appellant herein took the stand on his own behalf and stated that he was a relative of the decedent and that the decedent had no other relatives other than himself in the United States that he knew of, whereupon the respondents put on proof to the effect that the decedent had known relatives in Rumania and that the relatives in Rumania were of closer kindred than the appellant, and by reason of this it is claimed that they are entitled to the estate and the proceeds therefrom. After both sides concluded their proof the following proceedings took place:
"Court: This matter will be submitted, subject to the briefs you gentlemen will file. In addition to the proof that has been offered here, the court should have proof from the Department of State as to the relationship between heirs of this country and heirs of this state, with rights in Rumania and reciprocal rights; and, I take it, that you contacted the Department and will furnish it to me.
"Mr. McElwain: We are in contact at the present time, and we received a letter last week, requesting the information, as to whether this was real or personal property, which may be determinative, and whether or not the deceased was an alien or citizen of the United States. We have furnished this information by airmail letter and would like to have it stipulated that the matter is then submitted.
"Mr. Anderson: Of course, if you are going to submit some proof along that line, we want to be heard on it. Of course that is a fact that they have to prove, so, then I suppose the proper order would be to give an order continuing it for further hearing.
"The Court: That, I think would be more advisable, because the court is going to have to have that proof. The court takes judicial notice of treaties and things of that kind.
"Mr. Anderson: Foreign law has to be proven in a certain established manner.
"The Court: If it is a foreign law; but, if it is a treaty arrangement, then why can't the court take judicial notice?
"Mr. Anderson: It is a matter of foreign law that has to be proven.
"The Court: Before disposing of this matter, I am going to know, that, whether or not it is. That is a matter that won't concern the points at issue, so far as these briefs are concerned, is it?
"Mr. Anderson: We can go ahead and prepare a brief, yes.
"The Court: I think so, and, then, when the time comes, that should be reasonably soon, we will have that other matter heard."
After the proceedings above quoted, and on June 26, 1950, the court then made an order that the hearing be continued until foreign proof could be submitted. Thereafter, and on the 18th day of February 1952, and without the benefit of further proceedings the court made its order determining heirship, which order determined that the appellant is not an heir at law of the decedent and determining that the heirs at law of the decedent are as follows, and as such are entitled to the distribution of decedent's estate:
"Constantin Stoian, related as brother, and residing at Poiana Sibiului 1322, Roumania;
"Paul, also known as Pavel, Stoian, related as brother, and residing in the Republic of Roumania;
"Children surviving decedent's sister, Maria Stoian Bodea, and who are *1087 related as nieces and nephews of decedent, and whose names and addresses were not definitely established at said hearing; and,
"Children surviving decedent's brother, Dimitru Stoian, and who are related as nieces and nephews of decedent, and whose names and addresses were not definitely established at said hearing.
"That the father and mother of the said Eli Stoian, also known as Elie Stoian, died prior to his death; that the Administrator of said estate, and the Plaintiff in the action to determine heirship in the matter of said estate, Dan D. Vonica, is related as second cousin to decedent, as such is not within a degree of relationship that entitles him to inherit as an heir of the said Eli Stoian, also known as Elie Stoian, deceased; that if the sons and daughters of the decedent's sister, Maria Stoian Bodea, and the decedent's brother, Dimitru Stoian, are not satisfactorily identified and proven to be the nieces and nephews of the decedent, Eli Stoian, also known as Elie Stoian, prior to the time that the administrator of said estate petitions for the distribution of said estate, it is determined that the heirs-at-law of the decedent, entitled to the distribution of the assets of said estate, are the aforementioned Constantin Stoian and Paul, also known as Pavel, Stoian."
It is from this order that the appellant has appealed.
The appellant has advanced one specification of error which is as follows: "The court erred in making its order determining heirship, declaring the alien claimants the sole heirs at law."
R.C.M. 1947, sec. 91-520, provides as follows: "No person shall receive money or property, save and except mining property, as provided in section 25, Article III, of the Constitution of the state of Montana, as an heir, devisee and/or legatee of a deceased person leaving an estate or portion thereof in the state of Montana, if such heir, devisee and/or legatee, at the time of the death of said deceased person, is not a citizen of the United States and is a resident of a foreign country at the time of the death of said intestate or testator, unless, reciprocally, the foreign country in question would permit the transfer to an heir, devisee and/or legatee residing in the United States, of property left by a deceased person in said foreign country."
It is contended by respondents that the ability of a United States citizen to take property in Rumania has been determined in the case of In re Kennedy's Estate (State v. American Trust Co.), 106 Cal. App. (2d) 621, 235 Pac. (2d) 837, 841. It is further contended that the requirements of R.C.M. 1947, sec. 91-520, above quoted, are met when at the date of the death of the decedent the foreign country permitted the transfer to an heir residing in the United States of property left in the foreign country (contending the Kennedy case as exclusive proof of this point). It is contended that the Kennedy case is one of which the Montana court must take judicial notice.
In an examination of the Kennedy case it is plain to see that the facts therein were very similar to the facts as are involved here. The court held that there was reciprocity with Rumania at approximately the time when the death of decedent in the instant case occurred. There is nothing in the record to suggest that the Kennedy case was brought to the attention of the court below. However, it is reasonable to assume that the district court was familiar with it and that as a result of the findings in the Kennedy case the court of its own motion took judicial knowledge of matters therein contained and made its finding in the instant case accordingly.
In the Kennedy case there was some discussion to the effect that the Rumanian laws as they then existed were not being observed and obeyed. However, the court said that the Rumanian laws in evidence were not ambiguous and in the absence of controverting evidence the presumption supplies the fact that the said laws were being obeyed and observed.
The court said in that case: "Accordingly, the presumption of continuity applies *1088 to the evidence in this case. That presumption was not controverted by evidence offered by either party. The trier of the facts was `bound to find according to the presumption' Code Civ. Proc., sec. 1961. Even if appellant had introduced some controverting evidence, the presumption would have remained in the case, for consideration and weighing by the trier of the facts."
R.C.M. 1947, sec. 93-501-2, provides as follows: "Every court of this state shall take judicial notice of the common law and statutes of every state, territory and other jurisdiction of the United States."
If we are to assume, for the purposes of discussion, that the [1-3] findings in connection with the laws of Rumania, as were set forth in the Kennedy case, supra, were in fact the common law of that state, and if we were to further assume that the district judge had before him the citation of that case before he made his ruling in the instant case, nonetheless the rule is that before a litigant may invoke the benefits of such foreign law, he must give notice to the adverse party of his intention to do so before offering proof of such foreign law or before asking the court to take judicial notice thereof. R.C.M. 1947, sec. 93-501-5; 31 C.J.S., Evidence, sec. 18, page 534. There is nothing in the record to suggest that any notice was given to the appellant, and under the circumstances it is altogether possible that the appellant may have been able to offer some proof contrary to the contention of the respondents and contrary to the findings in the Kennedy case, and as a result the findings of the lower court in the instant case may have been decidedly different from those which we have before us. The ruling in the Kennedy case was based upon a determination of fact by the trier of facts and we hold that the district judge in the instant case should make his own determination of fact and not use some other court in a sister state to do that chore for him.
The determination of heirship by the lower court was premature and thus was error, and therefore we are not called upon to answer the arguments and discussions presented in the briefs regarding that finding. The ruling of the district court is reversed and it is directed that the lower court make its own determinaiton in connection with whether or not the country of Rumania has reciprocity with the United States in connection with inheritance, after due notice is given to the interested litigants that a case decided in a sister state is to be used in connection with its findings and an opportunity afforded all litigants interested to be heard upon the question. And it is further directed that said district court make a determination as to whether or not such foreign country places restrictions upon the movement of money or property out of such foreign country and if so, make its order according to the directions found in R.C.M. 1947, sec. 91-520, subdivision 3.
FREEBOURN and ANGSTMAN, JJ., concur.
ADAIR, Chief Justice (dissenting).
I am unable to agree with the majority opinion.
There is not now in force between the United States and Rumania any treaty or other agreement containing provisions according reciprocal rights of inheritance.
In the absence of treaty provisions relating to the right of the nationals of either country with respect to the inheritance of or succession to property in the other country such matters are governed by the laws of the jurisdiction in which the decedent's property is located.
In the instant case the decedent was domiciled and died in the State of Montana and the personal property which he left in such state is to be administered and disposed of in accordance with the laws of Montana.
While Rumanian laws probably would not prevent an American citizen from inheriting property having its situs in Rumania, yet as a practical matter it would be virtually impossible for him to derive any benefit from his inheritance.
Rumania is behind the "Iron Curtain" and the transfer of funds abroad is rigidly controlled by the Rumanian government under its foreign exchange control laws *1089 and such transfers are not approved by such government unless it would be considered that such transfer would be in the interest of that government.
Under existing Rumanian foreign exchange control regulations dollar funds remitted to Rumania through commercial banking channels are retained by the Rumanian government and the persons to whom the remittances are directed receive Rumanian currency at the rate of approximately 6 lei to the dollar.
Should an American citizen desire to go to Rumania to occupy inherited real property and should he be granted permission to enter that country he would find his position tenuous in consequence of the Rumanian nationalization and expropriation laws.
Rumanian regulations provide that permanent residents of that country must report to the government the acquisition of any foreign exchange assets and upon demand must assign such assets to the government against reimbursement in local currency being effected at the aforesaid rate of approximately 6 lei to the dollar.
The burden is upon the foreign heir or claimant to prove that reciprocity is in fact accorded by his nation before any transfer of money or property situate in Montana can be effected to such heir or claimant in a foreign country. Compare In re Getream's Estate, 200 Misc. 543, 107 N.Y.S. (2d) 225; In re Braier's Estate, Sur., 108 N.Y.S. (2d) 417, affirmed 305 N.Y. 148, 111 N.E. (2d) 424.
The foreign heirs were wholly unable to prove in the district court that reciprocity is accorded by Rumania. There has been no change in the fact situation during the time the cause has been pending in the supreme court. In view of this situation there appears to be neither need nor reason for remanding the cause to the district court for further proceedings.
On this appeal the appellate court is not fettered by any rule of law from doing exact justice between all the parties in interest. These proceedings are of an equitable nature and it is our duty to review all questions of fact arising from the evidence presented by the record and here and now determine the same, as well as questions of law. R.C.M. 1947, sec. 93-216; In re Connolly's Estate, 79 Mont. 445, 451, 257 Pac. 418; In re Sikorski's Estate, 127 Mont., 563, 268 Pac. (2d) 395.
The district court's order should be modified to conform with the requirements of Montana's statutes, sec. 91-520 et seq., and the litigation thus terminated.
BOTTOMLY, Justice.
I dissent. The majority opinion cites and relies upon the case of In re Kennedy's Estate, 106 Cal. App. (2d) 621, 235 Pac. (2d) 837, but in that case the California court found that the foreign heirs had proved to the satisfaction of that court that the laws of the Russian dominated communist state of the People's Popular Republic of Rumania, being the Republica Populara Romana, provided reciprocity. Such a finding by a California court is no proof of a fact to be proved in an heirship proceeding in our Montana courts. The Montana statutes and decisions control.
R.C.M. 1947, sec. 91-520, prescribing rights of non-resident aliens, next of kin or heirs to take as heirs by succession or on testamentary disposition, is dependent upon the existence of reciprocal rights of United States citizens to take property in the country of which such aliens are resident, is a part of our substantive law of succession and not merely a procedural statute, and the burden is upon the alien next of kin or heir to prove such reciprocity, in order to take as an heir, and if such proof is not made as in this case, the estate escheats to the school funds of the State of Montana. R.C.M. 1947, secs. 91-520, 91-521, and see amendments; Bottomly v. Meagher County, 114 Mont. 200, 133 Pac. (2d) 770. The estate escheats conditionally in the instant case, as provided by R.C.M. 1947, sec. 91-509. The assets of the estate, less costs of administration, are held in trust by the state treasurer in the school fund for two years, during which time any such foreign heir, upon bringing a proceeding as provided and proving reciprocity, may have judgment therefor. R.C.M. 1947, secs. 91-509, 91-510 and 91-511, are the procedural *1090 statutes provided for just such proceedings as this matter before us.
The uncontroverted proof in this proceeding conclusively shows that the next of kin of deceased is two brothers and a nephew, being citizens and residents of the Republica Populara Romana, a Russian-dominated communist state, behind the "Iron Curtain." They made no proof of reciprocity, and this court should take judicial notice of the fact that no such proof can be made of reciprocity. No Montana court should be so naive as to believe that any citizen and resident of Montana, being an heir, next of kin, or beneficiary under a testamentary disposition made and administered in Rumania, could ever receive any dollars or property from behind the "Iron Curtain" from any estate or transaction in the Republica Populara Romana. Compare, In re Getream's Estate, 1951, 200 Misc. 543, 107 N.Y.S. (2d) 225. These foreign heirs are the only ones of interest and the only ones who may complain, and they have been provided by statute with two years in which to bring an action and prove their right to take.
These foreign heirs, respondents, understand the law relative to this matter and in their brief set forth that: "The fact of determining heirship and relationship is important even though the persons so determined do not qualify by reason of foreign residency. In this case, if relationship of Rumanian heirs exists but they fail to qualify, the property would escheat to the state rather than be distributed to Vonica as a lesser relation (Bottomly v. Meagher County [114 Mont. 220, 133 Pac. (2d) 770, 775]). If the property escheats by reason of failure to qualify, [then] under the provisions of Section 91-509, R.C.M. 1947, the property could still be claimed within two years provided such foreign heirs could prove reciprocity. * * * The matter then becomes a question between the State of Montana and these proven heirs as to whether or not they are qualified to take this property by reason of reciprocity or whether the property escheats to the State of Montana." The foregoing is a correct statement by respondents of the law applicable in this proceeding.
In Bottomly v. Meagher County, supra, this court, speaking of Chapter 104, laws of 1939, said: "Each Act disqualifies certain heirs, but neither substitutes others, nor leaves the property to devolve to other heirs of the same or more remote degree. Each couples the disqualification with the diversion of the shares for public use; it not only disqualifies the heir in question but takes the estate or his interest in it out of the succession Acts entirely.
"* * * The legislature has power to provide for escheats, solely because it represents the sovereignty of the state and is dealing with the state's rights to the reversion of property not permitted under the statutes to go to heirs * * *. Escheat constitutes an obstruction in the course of descent and is an attribute of sovereignty. * * *
"The effect of section 2 [R.C.M. 1947, sec. 91-520] and the first sentence of section 3 [R.C.M. 1947, sec. 91-521] is absolutely to deprive the designated aliens of the distributive interests which would otherwise have vested in them. * * *
"As for alien heirs, since their rights depend upon the existence of the reciprocal permission required of their country by section 2 of Chapter 104 [sec. 91-520, supra], the burden is clearly upon them to prove its existence. * * * (Emphasis supplied.)
Section 2 of Chapter 104 constitutes substantive law. Bottomly v. Meagher County, supra.
This court said in In re Nossen's Estate, 118 Mont. 40, 162 Pac. (2d) 216, 217: "That it was the intent of the legislature to change the conditions under which rights might vest under the circumstances stated in section 2 of Chapter 104 [sec. 91-520, supra], is shown by section 3 [91-521, supra], which specified the procedure to be followed `in any estate where money or property would have vested in any person but for the provisions of Section one' (two) of the Act."
In In re Giebler's Estate, 118 Mont. 44, 162 Pac. (2d) 368, 370, this court said: "It is well to note that until 1939 our statutes provided that certain next of kin of an intestate were his heirs at law, without any *1091 reference to their citizenship or place of residence, but that Chapter 104 [Laws of 1939] then made a further requirement with regard to nonresident alien next of kin. Thereafter, upon an intestate's death, his nonresident alien next of kin did not become his heirs unless the foreign country of their residence reciprocally permitted like rights in estates there to pass to heirs resident in the United States.
"* * * It followed that if at intestate's death his next of kin are entitled to take as heirs under our statutes they immediately become his heirs, and their interests can be divested only by due process of law. On the contrary, if they are not then entitled to take as heirs the property immediately escheats to the state of Montana under the provisions of Chapter 104." (Emphasis supplied.)
Whether there is or is not reciprocity between the United States of America and the Republica Populara Romana, being the country of Rumania, would make no difference to appellant Vonica, for if there is proof of reciprocity within the two-year period, the estate would eventually go to such foreign heirs; if proof cannot be made of reciprocity in such an action provided by R.C.M. 1947, sec. 91-509, the estate, less costs of administration, would escheat to the school funds of the State of Montana. Bottomly v. Meagher County, supra; In re Nossen's Estate, supra; In re Giebler's Estate, supra.
Under our applicable statutes and the foregoing decisions of this court, where as here, the undisputed evidence disclosed that Eli Stoian, deceased, left as his next of kin two brothers and a nephew, living, residing, domiciled in, and citizens of a foreign country, to-wit, the Russian-dominated communist country of the People's Republic of Rumania, the court was correct in so finding. But under R.C.M. 1947, sec. 91-520, and the following statutes, and the above decisions of this court, where as here, no proof of a treaty or law of reciprocity was made, the whole of the estate, less costs of administration, escheats to the public school fund. Montana Constitution, Art. XI, sec. 2. Such foreign next of kin or heirs may within two years bring action to recover the estate by making proof of reciprocity.
The order of the district court should be amended to conform with sections 91-520 et seq., the statutes pertinent thereto, and in conformity to the decisions of this court above noted. Thus the court's order would escheat the estate to the State of Montana, less the costs of administration, to the public school fund, and the alien next of kin or heirs would have two years thereafter to make proof of reciprocity in the proceedings provided by statute, and not in this proceeding as apparently required by the majority opinion.