In the Matter of the **ESTATE** of Ida
**MILLERS, Deceased.**

No. 52930.

Supreme Court of Iowa.

June 11, 1968.

F. A. Royal, Des Moines, for appellant, Eva Tambek (Sepp).

John Paul Jones, Des Moines, for appellee, Andris Millers.

MOORE, Justice.

Ida Millers, a widowed alien, resident of Des Moines and former resident and citizen of Estonia, died testate February 2, 1965. She left surviving as her sole lineal descendant Andris Millers, her son. Andris, also an alien, had been sharing an apartment with his mother in Des Moines since 1961.

By her will, admitted to probate March 18, 1965 in Polk County, Ida directed that all her property, both real and personal, descend to her sister, Armilde Tambek of Nomme, Estonia, or in event she should predecease testatrix, to Armilde's daughter Eva Tambek-Sepp, who is now married and living in Estonia. Armilde Tambek died March 25, 1958.

Andris' attorney by letters dated February 25, and April 2, 1965 informed the surviving niece, Eva, of her aunt's death and the provisions of the will. She was advised it was questionable under Iowa law whether she was entitled to the personal property in the estate. As we shall point out infra the question existed because of the provisions of our Code section 567.8. The second letter did, however, express a willingness to cooperate in aiding her acquisition of some real property in Latvia ostensibly owned by decedent. Thereafter Eva employed New York attorneys who were immediately assured by Andris' attorney of his willingness to cooperate in presenting construction of the will to the court. This spirit of cooperation was not displayed by the New York attorneys. Their dilatory tactics resulted in much delay in bringing the question to issue.

Based on the executor's final report, filed October 15, 1965 the fiscal affairs of the estate were concluded without objection except for determination of entitlement to the residuum and possible inheritance tax liability. On October 29, 1965 Andris filed application for construction of the will asserting his claim to the residuum and a temporary executor was appointed. After much delay caused by the New York attorneys, including withdrawal of local counsel and employment of Mr. Royal, Eva's new Des Moines attorney, construction of the will was finally submitted to the trial court in January, 1967.

The trial court on April 13, 1967 filed his findings of fact, conclusions of law and a decree and judgment. The court awarded the personal property in the estate to Andris. This holding was based on two factors, (1) the nonresident alien Eva failed to carry the burden of proof required of her under Code section 567.8 and (2) entry of default against Eva nunc pro tunc from December 16, 1966.

Our review is de novo. Rule 334, Rules of Civil Procedure. We are unable to reach the same conclusion on either ground as found by the trial court and after a review of the entire record find a reversal must be ordered.

I. Section 567.8, Code, 1962, 1966 as pertinent here provides: "(1) The right of aliens not residing within the United States or its territories * * * to take personal property in this state by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States is dependent in each case upon the existence of a recipro-

cal right upon the part of citizens of the United States to take personal property upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are residents.

"(2) The burden shall be upon such nonresident aliens to establish the fact of existence of the reciprocal right set forth in subsection 1."

The trial court placed considerable emphasis on the words "reciprocal right", expressly holding such a "right" is incapable of establishment in the absence of a formal treaty agreement between the respective countries encompassing reciprocal inheritance rights. The record shows without dispute no such treaty existed.

The obvious result of the trial court's holding would be the absolute frustration of the testamentary intent of an Iowa resident desirous of devising property to residents of a country with which the United States had not entered a written treaty agreement. Such result would necessarily obtain regardless of incontrovertible evidence conclusively establishing a presently existing course of conduct tantamount to reciprocity of inheritance rights between two countries. Although we agree with appellee treaty provisions specifically governing inheritance rights would be highly persuasive, if not conclusive, evidence of a "reciprocal right" as contemplated under section 567.8 we do not believe the legislature intended to so restrict the capacity of our citizens to dispose of their property by testamentary devise.

■■■ The primary rule in construing a statute is to ascertain and give effect to the intention of the legislature and we are required to interpret the language fairly and sensibly in accordance with the plain meaning of the words used by the legislature. In re Estate of Klug, 251 Iowa 1128, 1131, 1132, 104 N.W.2d 600, 602, 603, and citations.

82 C.J.S. Statutes § 321, states: "The fundamental rule of statutory construction is to ascertain and, if possible, give effect to the intention or purpose of the legislature as expressed in the statute." Similar statements are made in 50 Am.Jur., Statutes, section 223.

Section 4.2 with reference to our Code provides: "Its provisions and all proceedings under it shall be liberally construed with a view to promote its objects and assist the parties in obtaining justice."

■■■ Section 567.8 does not refer to treaties. We can nowhere discern in its wording any mandate requiring us to hold reciprocal rights include only those established by treaty. It is readily apparent such an interpretation to a large extent would render meaningless the statute's purpose which is obviously to allow a nonresident alien to inherit when both the law of his country, and the practice under that law, permit American citizens to inherit under the same circumstances as a citizen of that country.

Appellee's contention proof of a treaty is necessary under section 567.8 presents a question of first impression before this court. It has, however, been decided contrary to appellee's position by the California court. California has a statute (section 259) identical to section 567.8. In regard thereto the court in In re Knutzen's Estate, 31 Cal.2d 573, 191 P.2d 747, 751, 752, says: "The statute, however, does not refer to treaties, and there is nothing in its wording which requires the construction that 'reciprocal rights' include only those established by treaty. Such a construction would defeat the obvious purpose of the statute which was to permit a nonresident alien to inherit when the laws of his country would permit an American citizen to inherit under the same circumstances. Evidence of the foreign domestic law is therefore admissible to prove the existence of reciprocal inheritance rights. Cf. Estate of Blak, 65 Cal.App.2d 232, 236, 150 P.2d 567; In re Nielsen's Estate [118 Mont. 304], 165 P.2d 792." See also In re Bevilacqua's Estate, 31 Cal.2d 580, 191 P.2d

**444**

752; In re Estate of Larkin, 65 Cal.2d 60, 52 Cal.Rptr. 441, 416 P.2d 473; In re Estate of Chichernea, 66 Cal.2d 83, 57 Cal. Rptr. 135, 424 P.2d 687, in which nonresident aliens were allowed to inherit without proof of a treaty. We believe the holding of the California court is sound.

II. We have carefully examined the record and exhibits certified to us and conclude appellant did meet the burden of proof imposed upon her by section 567.-8(2).

Appellant's case depends largely upon the answers to written interrogatories and cross-interrogatories propounded to Professor Harold J. Berman of the Harvard Law School. They were taken in evidence by stipulation of the parties. Professor Berman is a nationally recognized authority on Russian law. He has been in the Soviet Union seven times since 1955, including a year spent there doing research in Soviet law. He has visited and argued before Russian courts. He has testified as an expert on Russian law in many courts in the United States. In In re Estate of Larkin, supra, 52 Cal.Rptr. 441, 416 P.2d 473, Professor Berman's testimony is to the same effect as his answers to interrogatories here. In Larkin under an identical statute as our Code section 567.8 the California court permitted a citizen and resident of Russia to take under a will in that state. In a footnote at page 442 of 52 Cal.Rptr., at page 477 of 416 P.2d, the California Supreme Court says: "Professor Berman possesses the highest qualifications to testify in regard to the law of the Soviet Union. * * * Professor Berman stated that during his visits in the Soviet Union he had taken particular care to inform himself of the Soviet law and practice relating to inheritance by United States citizens because of the frequency with which he has been called upon to give an opinion on this matter in the United States."

In the case at bar Professor Berman's qualifications or competency are not challenged. None of his testimony is contradicted.

His testimony reveals he has studied and is familiar with the current Civil Codes of the Estonian Soviet Socialist Republic, the Union of Soviet Socialist Republics (U.S. S.R.), and the Russian Soviet Federated Socialist Republic (R.S.F.S.R.). The R.S. F.S.R. is the largest of the sixteen Union Republics which comprise the U.S.S.R. The Fundamental Principles of Civil Legislation of the U.S.S.R. (referred to as the Fundamental Principles) which were adopted in 1961 and somewhat modified in 1964 govern all Civil Codes of the various republics including Estonia.

Article 122 of the Fundamental Principles to which the Estonian Civil Code is subject provides: Capacity of foreign citizens to have civil rights and obligations: Foreign citizens (that is citizens of foreign states—HJB) shall enjoy the capacity to have civil rights and obligations equally with Soviet citizens. Individual exceptions may be established by laws of the U.S.S.R.

"The Council of Ministers of the U.S.S. R. may impose retaliatory restrictions upon citizens of those states in which there exist special restrictions upon the capacity of Soviet citizens to have civil rights and obligations."

Article 9 provides: "Content of the capacity of citizens to have civil rights and obligations.

"Citizens may have, in accordance with law, personal ownership of property, the right of use of dwelling places and other property, the right to inherit and to dispose of property by will, * * *."

Thus, although Article 9 refers to the rights of "citizens of the U.S.S.R.," under Article 122 these rights are automatically extended to citizens of foreign states unless there is legislation restricting the rights of foreigners or unless the Council of Ministers of the U.S.S.R. has established special restrictions by way of retaliation against countries which discriminate

against Soviet citizens. Professor Berman stated "in the case of inheritance, no legislation has been adopted restricting the rights of foreigners and the Council of Ministers has not imposed retaliatory restrictions upon the rights of American (or, as far as I know) citizens to inherit from Soviet decedents."

Another statement of Professor Berman is particularly pertinent. "In addition many cases have arisen in which foreigners, including American citizens, have been left property by Soviet citizens either by will or by intestate succession, and in all such cases which have come to my attention, including both reported and unreported cases, the foreigners' rights to inherit have been fully protected."

Especially persuasive is Professor Berman's reply to a hypothetical question which poses the exact factual situation present in this case. His answer was "Soviet law, including Estonian law, clearly provides that under the assumed facts, the niece would have full rights to take the entire estate under the terms of the will."

Also in evidence is an affidavit taken in 1963 of Nikita I. Bondarev, Senior Notary of the First Moscow State Notarial Office. As Senior Notary he was in charge of administering inheritance laws which included such duties as certifying wills, protecting estate property, and notifying heirs of the opening of an estate. He testified to numerous cases in which he had remitted funds to nonresident aliens, including those residing in the United States.

Two letters dated April 1 and April 23, 1965, from the United States Department of State were received in evidence. The Department stated there is not now in force any treaty agreement between the United States and the U.S.S.R. containing provisions relative to inheritance rights of citizens of either country. One letter referred to a 1925 treaty between Estonia and the United States providing for reciprocal inheritance rights. It went on to say that in view of the armed Soviet takeover of Estonia in 1940 and the subsequent Soviet repudiation of any previous Estonian treaty agreements, the Department recognizes "limitations exist on the effect which can be given to provisions of the Treaty of 1925" and therefore "considers that the administration of estates is a matter within the jurisdiction of the various States and the court having funds to be distributed to beneficiaries abroad is the appropriate body to determine whether * * * distribution should be made * * *."

■ Considering the weight and persuasiveness of the uncontradicted testimony produced we hold appellant has sufficiently met her burden of proving the "reciprocal right" as contemplated under 567.8(2).

■ In reaching such a conclusion we are not unmindful of appellee's concern over the absence of proof that the property in this case, or in similar cases, will or ever has reached the intended recipient. The State Department states dollar amounts remitted to Estonian citizens are retained by Soviet authorities, and the recipients receive Soviet currency at a rate of exchange controlled by said authorities. Whether such practice results in inequitable distribution to the intended recipient, while regrettable, is not our concern under a proper construction of section 567.8. Our sole function is to determine whether our citizens enjoy reciprocal rights upon the same terms and conditions as Estonian citizens. The evidence before us reveals they do and that the requisite reciprocity has been shown.

■ III. Appellee next asserts appellant failed to specifically plead Estonian law and therefore the issue regarding the status of said law should not be considered. No such claim was made before the trial court. Appellee cites no authority other than his contention that: "It is axiomatic in Iowa that foreign law must be both pleaded and proved." Rule 94, R.C.P. supports this statement. Appellee, however, made no objection to the evidence submit-

ted in great detail concerning the law of Russia and Estonia. He in fact stipulated the interrogatories and answers made thereto by Professor Berman be taken as part of the record in the trial court. Other evidence regarding the foreign law was received without objection. Appellee's contention is untenable under the record.

■■■ Permitting the introduction of evidence on an issue not specifically pleaded obviates the necessity of its formal presentation. Where, as here, parties proceed without objection to try an issue, even though not presented by the pleadings, it amounts to consent to try such issue and it is rightfully in the case. Nelson v. Leaders, 258 Iowa 919, 922, 140 N.W.2d 921, 923; Reed v. Harvey, 253 Iowa 10, 13, 110 N.W.2d 442, 444; Federated Mutual, etc., Ins. Co. v. Erickson, 252 Iowa 1208, 1219, 110 N.W.2d 264, 270; Wilson v. Corbin, 241 Iowa 593, 605, 606, 41 N.W.2d 702, 708, 709.

IV. The conclusions of law filed April 13, 1967 include a finding appellee is entitled to a default against appellant. The default was applied retroactively from December 19, 1966. This holding was based on the trial court's conclusion that "after detailed review of the chronology of the persistent, but nonoppressive steps necessarily employed by claimant Millers through his counsel to bring about a final resolution of the questions here involved, and also of the succession of aggravating, unreasonable, unexplained delays obviously attributable to the New York counsel for the nonresident alien claimant, the court finds that Eva Tambek-Sepp * * * was dilatory, derelict, and guilty of unexcused .and inexcusable laches. Whether these delays were tactical or the product of negligence is of no moment."

A detailed chronological review of the events upon which the retroactive default was based would unduly lengthen this opinion. It is sufficient to note the long history of delay and procrastination was due in a large part to a New York law firm rep-

resenting Eva Tambek-Sepp. Their delaying tactics so embarrassed Mr. Clarence Cosson, a local attorney handling the case for the New York firm, that he withdrew as counsel on December 1, 1966.

On December 7, 1966, Mr. Fred Royal, Eva's newly retained lawyer, made a motion for continuance in order to prepare for trial. The court ordered hearing for December 19, on which date appellee reurged his motion for default and appellant moved for another continuance. Thereafter the trial court made the following order: "Now on this 19th day of December, 1966, the above matter again came before the Court, Eva Tambek appearing by her Attorney, F. A. Royal, and Andris Millers appearing by his Attorney, John Paul Jones, who insisted that the default of Eva Tambek be ordered, and the Court having again reviewed the record and file finds:

"1. That said Eva Tambek is in default, but this cannot be charged to her local attorneys of record.

"2. That over strenuous objection made on behalf of Andris Millers, the default should not be entered against Eva Tambek on this date.

"3. That this matter should be definitely set for final hearing on January 4, 1967, at 9 a.m.

"4. That the additional time allowed herein will give interested parties sufficient opportunity to become prepared to present their case.

"IT IS THEREFORE ORDERED AND DECREED the above matter will come on for hearing before the undersigned on January 4, 1967 at 9 a.m., at which time all matters pending shall be presented."

■■■ We have not been cited nor has our research revealed any case where entry of default and judgment thereon has been upheld after trial on the merits. Courts look with favor upon trials on the merits

of each case and the rights of a litigant should not be denied proper hearing by strict application of legal formalities. Hobbs v. Martin Marietta Co., 257 Iowa 124, 129, 131 N.W.2d 772, 775; Newell v. Tweed, 241 Iowa 90, 95, 40 N.W.2d 20, 23, and precedents cited in each. We are convinced this controversy should be decided on its merits and the retroactive default entered by the trial court should be given no force and effect.

This cause is reversed and remanded to the trial court for such further proceedings as necessary in the estate and for decree in accord with this opinion. Costs are taxed against the estate.

Reversed and remanded.

All Justices concur.