SARAH CARTER et al., Appellants, v. TOWN OF AVOCA et al., Appellees.

CEMETERIES: Right of Owner or Licensee. The exclusive right or license of a person to bury his dead in a particular lot of a public cemetery will be protected by the courts, even though there be no stronger showing of right than that the lot was *selected*, and was thereafter used as a sepulture for the party's dead.

*Appeal from Pottawattamie District Court.*—E. B. WOODRUFF, Judge.

APRIL 1, 1924.

ACTION in equity by heirs at law, claiming an exclusive right of sepulture in a portion of a cemetery lot, and to require

the removal of the body of another therefrom. From a judgment dismissing the petition, plaintiffs appeal.—*Reversed.*

*F. A. Turner,* for appellants.

*Preston & Dillinger* and *G. C. Wyland,* for appellees.

Vermilion, J.—The plaintiffs are the heirs at law of A. Q. Harris, deceased, and the defendants, aside from the town of Avoca, are the officers of the town, and the heirs at law of Henry Kuhl, deceased.

It is the claim of plaintiffs, as set up in the petition, that, at the time of his death, Harris had the right or license to have his body and the bodies of members of his family buried in the south half of Lot No. 110 in a public cemetery, the fee of which is in the defendant town; that Harris was buried on said half lot in 1871, his son in 1876, a grandchild, the daughter of one of the plaintiffs, in 1882, and his wife in 1913; that, since the burial of A. Q. Harris, they have cared for such half lot, erected monuments, tombstones, and markers thereon, and claimed to be the owners of the exclusive right to use the same for burial purposes, all of which was known to the defendants; that, in 1919, the town conveyed the southwest quarter of Lot 110 to Henry Kuhl, deceased; and that, upon his death, in 1920, his body was buried thereon. Plaintiffs pray that defendants be required to move the body of Henry Kuhl and to restore the ground to its condition prior to such burial.

The evidence shows that Harris, his wife, and his son were buried in the southeast quarter of Lot 110,—the first named, in 1871,—and that the grandchild is buried on the southwest quarter. At one time, the corners of the half lot were marked by stones, upon which a letter H was carved, and tombstones were erected, as we understand, at the graves of Harris and his son. All of these stones and markers seem to have disappeared some years ago. The grave of the grandchild was originally marked by gravel, but that too has disappeared, the grass has grown over the grave, and there is little, if any, indication of its presence. Members of the Harris family have mowed the grass on the half lot, or employed the caretaker at the cemetery to do so, from time to time, down to the present.

There is no evidence that Harris ever had any conveyance for any part of the lot. There is testimony that members of the family had at one time a "paper pertaining to the cemetery;" but it is lost, and there is no evidence of its contents, or that it was a deed.

The cemetery was owned by Cook & Allen as late as 1872. Thereafter, it was purchased by a fraternal order, and sold to the town in about 1880. In a record book kept by the town, showing owners of lots in the cemetery, as the entry was originally made, Harris was designated as the owner of the southwest quarter of the lot, by the use, as we understand, of the letters "S. W." in connection with the number of the lot and opposite his name. By an evident attempt at erasure, the letter W is partially obliterated, and an E written over it. By whom or when this record was prepared or the alteration made is not shown.

There is no question but that plaintiffs are entitled to the exclusive right of sepulture in the southeast quarter of the lot. As to the southwest quarter, it is the contention of defendants that neither Harris nor the plaintiffs had color of title thereto, and that plaintiffs have not established, in the manner required by Section 3004 of the Code and numerous decisions of this court where that section is construed, such a claim of right as will sustain a title by adverse possession.

We are of the opinion that neither that section nor the cited cases are applicable in the present situation. The plaintiffs are not claiming title to the quarter lot in question, nor even an easement in it. They claim merely the exclusive right or license to bury their dead there. Since no more is claimed than a mere privilege or license, we have no occasion to consider more than this. It may be said, however, that, even under a deed to a cemetery lot absolute in form, it is generally held that no title to the soil is acquired, but merely the privilege or license to make interments in the lot, to the exclusion of all others. *Anderson v. Acheson,* 132 Iowa 744.

Our concern is only with the question whether such a license is established, and, if so, whether the court will protect the heirs of one acquiring such a right in its continued enjoyment.

The right to have the graves of the dead kept secure from unwarranted disturbance, though the place of interment be only

in the constructive possession of the living, is one that the universal sentiment of all mankind requires should be protected. The difficulty of finding, in the ordinary and established rules for the protection of rights in real property generally, a basis for a civil action for the disturbance of a right of burial in a particular plot of ground is recognized. It is said in *Anderson v. Acheson,* supra:

"The rights of one to the burial place of his dead, in the absence of fee to the soil or right to the exclusive possession thereof, in respect to the maintenance of a civil action for its disturbance, is one of delicate, but not very satisfactory, solution. Because of the respect entertained for the final resting place of the dead, and so little temptation to disturb their repose, disturbances of the same have rarely become the subject of litigation. The adjudications have been sufficient, however, to establish the principle that, where one is permitted to bury his dead in a public cemetery, even though this be by license or privilege, he acquires such a possession of the spot of ground in which the bodies are buried as will entitle him to maintain an action against the owners of the fee or strangers who without right so to do disturb it."

The same doctrine is announced in *Bessemer Land & Impr. Co. v. Jenkins,* 111 Ala. 135 (18 So. 565). It is approved in *Hollman v. City of Platteville,* 101 Wis. 94 (76 N. W. 1119), and *Jacobus v. Congregation,* 107 Ga. 518 (33 S. E. 853, 73 Am. St. 141), and is incorporated in the text of Corpus Juris, 11 Corpus Juris 65. See, also, *Hertle v. Riddell,* 127 Ky. 623 (106 S. W. 282, 15 L. R. A. [N. S.] 796) ; *Wormley v. Wormley,* 207 Ill. 411 (69 N. E. 865) ; *Mitchell v. Thorne,* 134 N. Y. 536 (32 N. E. 10) ; *Hassenclever v. Romkey,* 133 Iowa 470.

The acquisition of the right of burial in the cemetery in question at an early day seems to have been very much a mere matter of appropriation of a particular plot of ground. The sexton, a witness for the defendants, who had been familiar with the cemetery for forty years, testified that "they just buried people there; some paid and some didn't." Although there is no showing that Harris acquired a right of burial in the half lot in any more formal way than by mere selection, it is shown that the entire half lot was marked by visible, and

no doubt supposedly permanent, corner stones, and was cared for by the members of his family. The burial of the grandchild in the west portion forty years ago, where the grave was marked in a visible manner for many years, must have been with the tacit, if not expressed, consent of the authorities controlling the cemetery, and in pursuance of the claim on the part of the heirs of Harris to have the right of burial in the entire half lot. The conceded right of burial in the southeast quarter of the lot was acquired in the same manner as that which is claimed in respect to the southwest quarter. The only difference is in the date on which the interments were made. The exclusive right of sepulture in the ground so appropriated, marked off, and used is one that the courts will protect at the suit of the heirs.

The judgment dismissing the petition cannot, under such circumstances and under the authorities cited, be sustained. The plaintiffs were entitled to the relief prayed for.

The case must be, and is,—*Reversed.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.