LEO W. SAYLES et al., appellants, v. BENNETT AVENUE DEVELOPMENT CORPORATION and CITY OF COUNCIL BLUFFS, appellees.

No. 51787.

(Reported in 138 N.W.2d 895)

December 14, 1965.

Rehearing Denied February 8, 1966.

Porter, Heithoff & Pratt, of Council Bluffs, for appellants.

Ross, Johnson, Stuart, Tinley & Peters, of Council Bluffs, for appellee Bennett Avenue Development Corporation.

John M. Peters and David E. Stuart, both of Council Bluffs, for appellee City of Council Bluffs.

BECKER, J.—The defendant Bennett Avenue Development Corporation, hereinafter called the corporation, entered into a sewage disposal contract with the City of Council Bluffs. Plaintiffs, consisting of the owners of some 17 properties within the City of Council Bluffs, seek to have the contract declared illegal as to them and to enjoin the defendant from certain actions thereunder. The matter was submitted to the trial court on agreed stipulation of facts. The contract was declared legal in all respects and plaintiffs' petition was dismissed.

The City of Council Bluffs lies in a valley adjacent to the Missouri River. Part of the city, including the area which is the subject of this controversy, lies on the easterly side of the bluffs along the river. The principal street within the city is Madison Avenue. Suburban residential areas lie beyond and outside of the easterly city boundary but immediately adjacent thereto. The principal street in the suburban area is Bennett Avenue. When the suburban areas were developed the problem of furnishing sanitary sewer facilities arose. At that time sanitary sewer facilities were not available in the Madison Avenue area whether in or out of the city because this entire area required either lift stations or an extended trunk line around the hilly terrain.

Defendant Bennett Avenue Development Corporation is an Iowa corporation which was organized for the primary purpose of constructing a sanitary sewer system to serve areas lying outside of, but adjacent to, the limits of defendant city. To carry out such purposes, it secured the necessary easements, licenses and permits from various railroads, the Iowa State Highway

Commission, and private individuals, to construct and lay a 15-inch main line sewer to connect to the city sewer system.

Defendant city entered into a written contract authorizing defendant corporation to connect its system to that of the city, providing for the payment of certain charges. Further, it allowed for service to city residents as hereinafter noted. The contract gave no indication of the fees to be charged property owners for connection to, or service by, this sewer system. The city did not reserve rate fixing powers. The corporation constructed so much of its system as was necessary to service the suburban area. It started action for declaratory judgment against the city to determine the validity of this contract as amended, and the respective rights and obligations of the corporation and the city. No other persons were served with notice of suit either individually or as representative of a class except the city which appeared and answered.

Declaratory judgment was entered February 25, 1958, declaring the contract as amended to be a valid, binding and existing contract and outlining certain rights and duties of the corporation and the city.

The contract between the corporation and the city provides in part: "The Corporation is granted the right, at its own cost, to construct, install or lay laterals or mains in the streets and alleys of the City in the area immediately adjacent to the area served by the Corporation's system, provided that such right shall not extend as to any area within the city now served by the sanitary sewer system of the City. Provided further, any such laterals or mains shall be maintained by the Corporation * * *".

Thereafter defendant corporation's system serviced only residences outside the city except for a small subdivision known as Lori Lane which was in the city. In 1963, five years after the declaratory judgment was entered, the corporation began to construct the disputed lines to service areas within the city limits. Plans have been furnished to us showing the extent of the present proposed extension of the system. It is this action that plaintiffs challenge.

All persons within the city desiring to be served by the corporation's sanitary sewer facilities are required to sign a sewer contract, pay a sewer connection agreement fee of $350, execute

a sewer service contract, pay a $24 deposit to the corporation, and thereafter pay a sewer service fee of $2.00 per month plus a sewer service fee ordinarily charged by the city based upon water service charges. In certain cases such persons are also required to pay $3.50 per front foot abutting Madison Avenue as a part of the cost of constructing such laterals. These costs contrast with the charges to other residents of the city in that there is no specified sewer connection fee charged by the city to those residents of the city who connect to and whose property abuts a lateral sewer extension, constructed and maintained by the city as a part of its sewer system. The connection charges are property assessments ordinarily made by the city based on costs under statutory procedure. The persons serviced by the city lines pay no monthly fee and execute no service contract. Both types of service require a sewage disposal charge paid as part of the water bill and are equal in that regard.

The controversy here arises over the fact that the people who may be serviced by the private corporation allege that they will be paying substantially more for the disposal of the sewage of their homes than is being charged other citizens of the city. None of the plaintiffs have connected to the system. Eleven of the plaintiffs have property abutting the lateral extensions already constructed. Six of the plaintiffs have properties to which no sewer system, public or private, presently extends, but all are property owners in the Madison Avenue area. There is no record that plaintiffs have demanded or requested installation of a public sewer system or that the city has refused to act in this regard.

In the declaratory judgment in 1958, the district court specifically found that the city was acting in its proprietary capacity, while acting in such capacity the city is subject to and governed by the same rules as apply to private individuals and corporations, and that the contract was legal. The detailed findings of fact and conclusions of law did not include a consideration of the rights of the citizens in connection with the contemplated services to be made available to the city residents; nor is there any showing that the detailed financial arrangements in connection with charges to users were submitted to or passed on by the court. The 15-inch main had been constructed, but there

is no showing that any action had been taken at that time in relation to the claimed right to supply sewer service to city residents.

Plaintiffs argue "That by reason of the foregoing facts, the acts, Contracts and proceedings already taken and about to be taken by the defendant [Bennett Avenue Development Corporation] as hereinabove stated are unlawful, null and void; * * *. Bennett Avenue Development Corporation will continue to complete said sewer and will enter into Contracts with property owners abutting said sewer line, charging rates in excess of those ordinarily charged users of sewers within the limits of the City of Council Bluffs, Iowa; * * *. The sewer being constructed will take the place of and eliminate the possibility of any sewer being furnished by the City of Council Bluffs, and will subject the abutting property owners to rates for sewer service in the event they ever wish to connect to said sewer in excess of the rates charged by the City of Council Bluffs, and in that respect the rates charged the residents of the property abutting the sewer under construction will be discriminatory against these plaintiffs and all other taxpayers in the same class as these plaintiffs as compared to rates charged other residents for sewer services in the City of Council Bluffs." ·

Plaintiffs pray that the Bennett Avenue Development Corporation be restrained and enjoined from continuing with the construction of the sewer presently in the process of construction on Madison Avenue, from entering into any contracts with any property owners abutting Madison Avenue for the connection of residents to said sewer and for all other and further equitable relief as may seem equitable in the premises, and that said contract and amendment be declared illegal *as to the plaintiff.*

The defendants answer that the plaintiffs show no infringement or threatened infringement of a right which has or will result in injury to the plaintiffs; the city is under no duty to construct public sewers; the city has power to make contracts in its proprietary capacity which will inure to the benefit of the city and its inhabitants; the plaintiffs are not required to use the services of the defendant corporation which have been authorized by the city, and finally that the issues are res adjudicata having been fully decided by the 1958 declaratory judgment

which is binding not only on the city and the corporation but upon all the residents of the city.

■ I. This case is in equity and as such is triable de novo. The first problem to be faced is the effect of the February 1958 declaratory judgment which declared the contract in question to be valid and legal in all respects. No appeal was taken therefrom, no intervention was sought by any other interested parties. The defendants strenuously argue that this judgment is binding not only upon the city but also upon all of its citizens. We need not decide this point. Conceding, without deciding, that the declaratory judgment declaring the contract valid in all respects is binding upon the citizens, in all respects, the declaratory judgment has no greater force than the issues it decided. See 16 Am. Jur., Declaratory Judgments, section 16, page 290, and pocket part for same section.

The contract provides: "The Corporation is granted the right, at its own cost, to construct, install or lay laterals or mains in the streets and alleys in the city in the area immediately adjacent to the area served by the corporation's system * * *." It may be conceded that this clause along with all others received approval by the trial court in the 1958 action. The question of what was meant by the term *immediately adjacent* was not decided in February 1958.

It is apparent from the plans submitted with the record that the 15-inch trunk line of defendant corporation curves around the city limits and does not approach the city in the Bennett Avenue area. The eight-inch main serving the suburban area connects with an eight-inch main constructed by the defendant corporation lying just inside of the city. The eight-inch main in the city runs northwesterly a distance of some 250 feet on Madison Avenue to a subdivision within the city called Lori Lane. The Lori Lane area in the city has been serviced by the defendant corporation by an eight-inch main extending westerly a distance of approximately 1000 feet with two 500-foot laterals going northerly from it. The plats indicate plans to extend the eight-inch main northwesterly on Madison Avenue a distance of approximately 4000 feet with a lateral extending northerly a distance of approximately 400 feet. Plaintiffs' properties lie in these areas.

In its finding of fact the trial court *in this case* found that the contract granted the "corporation the right to construct, install or lay laterals or mains in the streets and alleys of the defendant City of Council Bluffs in areas *adjacent* to those served by the corporation's system." We do not so read the contract. The contract specifically refers to "in the area *immediately* adjacent to the area served by the corporation's system."

The Madison Avenue area that lies within the city is some 2000 feet from the 15-inch main line at its closest point. The whole area in the city lying on the easterly side of what has been designated as the divide is approximately two miles long and two fifths of a mile wide. The declaratory judgment does not serve as a basis for a construction of the contract allowing service in this entire area. It does not, in fact, construe the contract in this regard at all. It is not necessary to disturb the findings of the trial court in the 1958 declaratory judgment to decide the issues of this case, for the issues here turn upon the rights of the parties under this contract, not upon the validity of the contract itself. Limited as it is to the areas immediately adjacent to the area to be serviced by the corporation and bolstered by a declaratory judgment action declaring this contract legal, we recognize the validity of the contract as between the city and the corporation as written. This does not mean that all of defendants' proposed actions under the contract are legal as to plaintiffs.

II. The business of disposing of sewage is a public utility business. Des Moines v. West Des Moines, 239 Iowa 1, 30 N.W.2d 500.

" 'Generalized, and divested of the special form which it assumes under a monarchical government based on feudal traditions, a franchise is a right, privilege or power of public concern, which ought not to be exercised by private individuals at their mere will and pleasure, but should be reserved for public control and administration, either by the government directly, or by public agents, acting under such conditions and regulations as the government may impose in the public interest, and for the public security. * * *'." California v. Central Pac. R. Co., 127 U. S. 1, 40, 41, 8 S. Ct. 1073, 1080, 32 L. Ed. 150, 157; 12 Mc-

Quillin, Municipal Corporations, Third Ed.; section 34.03, page 10.

▮▮▮ Defendant corporation proposes to extend its sewer lines into the city a distance of at least 4000 feet and operate laterals off of that line. Such action, if authorized by the contract in question, would be the exercise of a public utility franchise which the defendant city has no power to grant. The legislature has granted cities the power to grant franchises to operate heating plants, waterworks or gasworks and electric plants, or in the alternative to operate such plants themselves, chapter 397, Code, 1962; to grant, authorize and regulate street railways, chapter 402; to grant franchises for motorbus lines, chapter 386, or to operate transit systems themselves, chapter 386B. All of these grants of power to the cities are accompanied by detailed statutory regulations, most of which require submission of questions to the electorate.

No such grants of power are found in relation to sewers or sewage disposal. Contracts *between cities* are authorized for joint use of sanitary sewer systems or sewage disposal facilities, chapter 392; chapter 393 provides for sewage processing rates which must be just and equitable, *contracts* in connection therewith apply to persons or firms *outside* the corporate limits.

The legislature has spoken at great length of how the cities shall meet their sewage problems. Chapter 235 of the Sixtieth General Assembly cannot be construed to grant powers to the city in derogation of such statutes.

III. The powers granted to the municipalities of Iowa by statute in connection with sewer systems are independent of and quite different from authorization to act in the fields of water, gas, power and light.

In connection with the sewer services which must of necessity be provided in a modern community, the legislature does not authorize the cities to delegate this function or to contract for the function to be performed by others as is true in the aforementioned waterworks, gasworks, et cetera.

The right of the defendants to provide service through a private corporation to city residents *immediately adjacent* to the defendants' lines is not the real question raised by plaintiffs.

The question raised is, can the defendants under such verbiage embark on the creation of a private sewer system within the City of Council Bluffs servicing a substantial area of that city; and if so, can this arrangement be made in such fashion as to result in different and higher sewerage charge to the corporation's customers from those paid by the rest of the citizens of the city?

"The powers of municipalities are only those expressly granted by the legislature, those fairly implied in or incident to those expressly granted, and those indispensably essential—not merely convenient—to the declared objects and purposes of the municipality. Gritton v. City of Des Moines, 247 Iowa 326, 331, 73 N.W.2d 813, 815; City of Mason City v. Zerble, 250 Iowa 102, 106, 93 N.W.2d 94, 96, 97. Likewise the grant of powers is strictly construed, and when there is reasonable doubt as to the existence of a power it will be denied. Gritton v. City of Des Moines, supra, at page 331 of 247 Iowa, page 816 of 73 N.W.2d, with authorities cited." Kane v. City of Marion, 251 Iowa 1157, 1159, 104 N.W.2d 626. These rules applied before 1963, the date of the passage of chapter 235, Laws of the Sixtieth General Assembly, amending section 368.2. This amendment has been construed by us as a rule of construction, and as a rule of construction it is constitutional. Richardson v. City of Jefferson, 257 Iowa 709, 134 N.W.2d 528. The amendment, if applicable, prohibits narrowing or restricting a grant of power by construction unless the terms of such statute are so comprehensive as to entirely occupy the field of its subject.

The powers granted in relation to sewage are so comprehensive as to entirely occupy the field. Power to solve the sewerage problems by granting a franchise was not granted to the cities nor can it be supplied by implication when the breadth and detail of the present statutes are considered. "If ample provision for sewers and drains is made by statute, however, a municipality must exercise its powers in these matters under the statutes alone, and cannot lay claim to such authority as being necessarily incident to the exercise of its corporate powers or the performance of its corporate duties." 38 Am. Jur., Municipal Corporations, section 565, page 253.

IV. In Des Moines v. West Des Moines, 239 Iowa 1, 30

N.W.2d 500, the contract to handle the sewage of West Des Moines was authorized by section 392.1, Code, 1962. In Town of Sibley v. Ocheyedan Elec. Co., 194 Iowa 950, 187 N.W. 560, 561, the city was operating under then section 724 of the Code supplement 1913; in Hines v. City of Nevada, 150 Iowa 620, 130 N.W. 181, 32 L. R. A., N. S., 797, the city had constructed and operated its own municipal sewer system under statutory authority.

The foregoing cases are all of the Iowa cases cited by defendants involving the city's authority to act. No cases cited either in this state or any other state allow the city to grant the franchise herein contemplated for services to its residents, or any portion thereof without specific statutory authority.

Such statutory authority if granted would, we apprehend, provide for equality of rates and such measures protecting the public as are found in such grants of power in relation to gas, water and electricity. Absent such statutes, the city cannot assume such authority.

██ ██ V. Plaintiffs have shown sufficient standing to challenge defendants' action. They are residents and property owners of the area affected. While the general rule is quite clear that the city has a wide discretion in connection with the decision to supply sewerage, this discretion is not absolute. "Where a municipal corporation undertakes to construct a system of sewers, it must make provision for the increase that may reasonably and naturally be expected in its population." 11 McQuillin, Municipal Corporations, Third Ed., section 31.17, page 214.

"The improvement of streets, the general removal of surface waters, the facilities for carrying away waste matter which would otherwise be cast upon the surface to poison the soil and pollute the atmosphere are benefits in which every property owner has some share; and the obligation of mutual burden bearing which rests upon the congested population of cities and towns requires that the expense of making them convenient, comfortable and healthful shall, so far as practicable, be equitably distributed upon all property enjoying the benefit of municipal improvements." Bell v. City of Burlington, 154 Iowa 607, 614, 134 N.W. 1082. We made this observation in 1912. The prob-

lems of pollution of soil, surface waters and air, are far more acute in this day than at the time of the foregoing pronouncement. The burden on all property owners indicated by the court in Bell v. City of Burlington, supra, carries with it the concomitant rights to be treated fairly and equally in sharing this burden and receiving the benefits of the project.

VI. Nor is the assertion that plaintiffs need not avail themselves of the service offered by the defendant corporation quite accurate. The State Department of Health has adopted a code of rules one of which is: "Section 1. General. Wherever a sanitary sewer is available all sewage or industrial wastes shall be discharged into such sewer." Code, 1962, Iowa Departmental Rules, page 217.

Section 413.33, Code, 1962, provides: "Accessibility to city water and sewers. No multiple dwelling shall hereafter be erected unless there is accessible city water and a public sewer, or a private sewer connected directly with a public sewer. No cesspool or similar means of sewage disposal shall be used in connection with any dwelling where connection with a public sewer is practicable."

The argument is not persuasive. It will not do to say that since plaintiffs are now getting along with cesspools, septic tanks or other private means of waste disposal, they should pay the private corporation's charges, or be content. The other residents of the city are receiving cheaper service to meet the same needs. These residents are entitled to substantially equal treatment under all of the facts and circumstances. It would appear that this is all they really ask. Plaintiffs have a right to allege that the city and the corporation are acting illegally to their detriment.

VII. Consistent with the foregoing holdings, the application to grant an injunction should have been granted and the activities sought to be carried out by the defendant corporation should have been declared illegal. This case is reversed and remanded for judgment by the trial court not inconsistent with this opinion.

All JUSTICES concur.