Clifford DEARINGER and Howard L. Dearinger, Plaintiffs-Appellants,

v.

Kenneth PEERY, Earl Hendricks, and Randy Taylor, as Trustees, Elk Creek Township, Jasper County, Iowa; and William D. Van Wyk, Elvin E. Van Wyk and Patricia M. Van Wyk, Defendants-Appellees.

No. 85–405.

Court of Appeals of Iowa.

March 31, 1986.

John P. Dollar, of Seery & Dollary, Des Moines, for plaintiffs-appellants.

Charles W. Larson, of Walker, Neighbor, Larson & Billingsley, Newton, for defendant-appellees Trustees of Elk Creek Tp.

Bert A. Bandstra, Knoxville, for defendants-appellees Van Wyks.

Considered by SCHLEGEL, P.J., and HAYDEN and SACKETT, JJ.

SCHLEGEL, Presiding Judge.

This case involves an old one-acre cemetery known as the Dearinger Cemetery located in Elk Creek Township, Jasper County, Iowa. The cemetery was originally owned by Jacob Dearinger in the mid-1800s, but by 1860, the general public had begun to use Dearinger Cemetery as their final resting place. It is unclear exactly what arrangements were made between the Dearingers and the general public, but by the turn of the century it is estimated 10–30 graves with large, durable monuments, and other less distinctive graves were located on this one-acre piece of land.

The cemetery apparently became inactive shortly after 1900, and the various markers on the graves became severely deteriorated over the years. Records as to its maintenance are sporadic and incomplete. According to Elk Creek Township records, however, payments were made to individuals to work in the cemetery cutting brush as early as 1910, and as late as 1949. The records also disclose that the township listed the cemetery on its inventory of land owned in the years 1920, 1922, 1923, and 1924.

By the 1950's, the cemetery was severely overgrown with brush, weeds, and trees. The grave markers had fallen down and were lost in the underbrush. Apparently few, if any, relatives of the deceased came to decorate or commemorate any of the graves. In about 1962, the township trustees apparently decided to abandon the cemetery and approached William Van Wyk, an adjacent landowner to the cemetery, and asked him if he would be interested in farming the cemetery land. On December 20, 1962, the township conveyed a quit claim deed to Van Wyk transferring its interest in the cemetery.

The trustees, along with Van Wyk, then removed several stones and performed a symbolic removal and reinterment of dirt at the Hewitt Cemetery in Elk Creek Township. However, due to a protest by several elderly ladies, the grave of Jacob Dearinger, which was marked by a large headstone, and a grave of a woman named Dearinger, were left in place. In 1963, the two remaining graves were enclosed by a fence and the rest of the cemetery was cleared off by a bulldozer. The fence around the Dearinger graves gradually deteriorated and was pushed down by cattle and eventually disappeared. Field work was done right up to the graves, and cattle roamed over them.

In 1983, Van Wyk asked the township for permission to remove the remaining graves. They obtained permission from Martin Dearinger to remove the stones after plaintiff, Howard Dearinger, initially refused. The defendants then proceeded to move the tablet part of the stones to Hewitt cemetery and repeated the symbolic reinterment of dirt.

Various members of the Dearinger family became aware of the moving of the final two graves and protested to county and township officials, and the county attorney. Based upon an attorney general's opinion, the county attorney recommended to the trustees that they restore the cemetery and maintain it. When defendants refused to follow this advice, plaintiffs decided to file a mandamus action seeking to compel defendants to restore the cemetery and maintain it.

Plaintiffs specifically sought a writ of mandamus against the township for the restoration and maintenance of the "Dearinger Cemetery," and asked the court to determine the ownership and title rights of defendant Van Wyk in the one-acre parcel of land. In its ruling and findings of fact, the district court determined that the cemetery was never dedicated to the township and therefore the mandamus request should be denied. The district court also quieted title in defendant Van Wyk.

On appeal, plaintiffs allege the district court erred in its finding of fact that the cemetery was not a township cemetery. They allege that the duty of the township to maintain Dearinger Cemetery arises from the fact that the township owned the land. Conversely, the defendants argue there is insufficient evidence to show the township owned the land, and even if they had a duty to maintain the grounds, plaintiff's action in this case is barred by laches.

Our review of this equitable action is de novo. Iowa R.App.P. 4. This matter involves the proper construction of the statutory responsibilities placed upon township trustees regarding the maintenance and care for cemeteries. The relevant code sections are under the general heading, "Pub-lic Grounds or Buildings." See Iowa Code §§ 359.28–359.41. Our research has uncovered very little judicial interpretation of these code sections and no case law involving similar facts to those before us today. We, therefore, follow the guidelines we have followed before in interpreting statutes. In State v. Conner, 292 N.W.2d 682, 684 (Iowa 1980), the supreme court stated:

> The polestar of statutory interpretation is legislative intent. E.g., Loras College v. Iowa Civil Rights Commission, 285 N.W.2d 143, 147 (Iowa 1979). To discern that intent, it is necessary to examine the whole act of which the statutory provision in question is a part. E.G., Williams v. Osmundson, 281 N.W.2d 622, 626 (Iowa 1979); In re Estate of Bliven, 236 N.W.2d 366, 369 (Iowa 1975); see 2A C. Sands, Statutes and Statutory Construction § 47.02 (4th ed. 1973). Particularly relevant are substantively related provisions adopted in the same legislative session. See, e.g., State v. Schmitt, 290 N.W.2d 24, 26 (Iowa 1980); Iowa Farm Serum Co. v. Board of Pharmacy Examiners, 240 Iowa 734, 740, 35 N.W.2d 848, 851 (1949). From this examination of related provisions, an overall legislative scheme may become evident. If any single provision, read literally and in isolation, would be repugnant to the overall purpose or scheme, reasonable minds may be uncertain as to its meaning. Statutory construction is then appropriately invoked. See e.g., Janson v. Fulton 162 N.W.2d 438, 443 (Iowa 1968); Case v. Olson, 234 Iowa 869, 876–77, 14 N.W.2d 717, 721 (1944).

We note that all of the relevant code sections have been substantially unchanged since 1924. It is, therefore, apparent that historically all of the sections have been considered to be integral parts of the overall scheme of responsibilities and powers entrusted in the townships.

Plaintiffs argue that it is imperative that the township own the cemetery in order for the duties of maintenance to apply to the trustees. They claim that the township assumed ownership to the cemetery by im-

plied dedication. The district court found evidence of acceptance of dedication by the township, but then determined that there had been no dedication itself. We concur with the court that the facts support the conclusion that the township accepted the responsibilities and benefits of ownership of the cemetery by virtue of its listing the property on its inventory in the 1920's, sporadically maintaining the grounds, and in exercising control over the cemetery by attempting to dispose of it.

Plaintiff then argues that we should recognize the dedication by the Dearingers on the strength of an analogy to road dedication cases decided by the Iowa Supreme Court in 1915 and 1919. Defendant Van Wyk, however, points out that section 359.-29 allows townships to acquire public grounds such as a cemetery only by a resolution of the board of trustees of such township. Since there is no evidence of a resolution in the record, we would be inclined to agree that there is no township ownership in this case. Additionally, since it appears that the statute provides the exclusive means of acquiring a cemetery, we must decline plaintiff's offer to analogize to road dedication decisions. However, the statutory method of acquiring the property referred to in section 359.29 was adopted in 1906 by the 31st General Assembly. We have found authority prior to this enactment that would allow a type of acquisition the plaintiffs allege occurred in this case. . In *Morrison v. Marquardt*, 24 Iowa 35, 42–43 (1867), the supreme court noted:

> *Fairall & Boal*, and *Edmonds & Ransom*, for the plaintiffs, in the course of a lengthy argument, made, among others, the following points:
>
> 1. Robinson, by his acts, the use to which he devoted it, and his continued assent, *dedicated* the area to a common use. *City of Cincinnati v. White*, 6 Pet. 431 [31 U.S. 431, 8 L.Ed. 452]; *Hunter v. Trustees, etc.*, 6 Hill, 407.
>
> A dedication may be made without writing, by act *in pais* as well as by deed.

It is not at all necessary that the owner should part with the *title* which he has, for dedication has respect to *possession* and not the *permanent estate*. Wash. Real Prop. vol. 2, marginal page 460. A dedication of real property is that devotion to use, which estops the owner of the fee; not a technical estoppel which must be by deed, or matter of record, but an estoppel *in pais. Hobbs v. Lowell*, 19 Pick. 405–409.

The learned judge in this case in discussing what constitutes a dedication says, "a dedication may be presumed from circumstances from which the *assent* of the owner of the soil may be inferred." *See also Beatty v. Kurts*, 2 Peters, 566 [27 U.S. 566, 7 L.Ed. 521]; *Town of Pawlett v. Clark*, 9 Cranch 292 [13 U.S. 292, 3 L.Ed. 735]; *Maxwell v. East River Bank*, 3 Bosw. (N.Y.) 125, where this kind of dedication is fully considered.

■ In this case, the events between 1860 and 1900 allow us to infer that the Dearinger Cemetery was dedicated to the common use as a public cemetery. And, because the acts were accomplished before the statutory resolution requirement was enacted, the failure of any resolution by the township to acquire the cemetery does not prevent the finding of township ownership of this land.

■ While we find township ownership of this cemetery, we do not agree with plaintiffs that the township's duty to maintain the cemetery arises out of Iowa Code section 359.37 (1983). This section states in relevant part:

> The trustees, after such land has been advertised for sealed bids by the trustees, shall have authority to sell and dispose of any lands or parcels of lands heretofore dedicated for cemetery purposes and which are no longer necessary for such purposes, for the reason that no burials *are being made* in such cemetery, provided that any portion of said cemetery in which burials *have been made* shall be kept and maintained by said trustees. The proceeds from such sales shall be deposited in the tax fund

established in accordance with section 359.30, to be used for the purposes of that fund. (Emphasis ours.)

We interpret this section to apply to an area of land that has been partially used for cemetery purposes but is no longer used for that purpose. We conclude that section 359.37 defines the method and circumstance that permit a township to sell the *unused* portion of the cemetery. These are not the circumstances before us in this case. Nothing in the record shows anything other than an entire acre of land dedicated for cemetery purposes and, in fact, used and occupied by graves. We find nothing in section 359.37 that allows the township to dispose of land that has formerly been used and is presently occupied by graves. The only other section allowing the sale of cemetery land is section 359.31 which enables the trustees to, "... sell the same to any private corporation for cemetery purposes." This was not done here either.

■ The record shows that for all practical purposes the township had abandoned the cemetery prior to 1962, when it contracted with Van Wyk to bulldoze it. All parties recognize that the township did, in fact, decide to abandon Dearinger Cemetery by 1962. Due to the state of disrepair the cemetery was in by this date, we can properly assume the township had in fact abandoned the cemetery long before 1962.

■ In light of this factual determination, the question becomes whether a township is bound to maintain a cemetery that it no longer uses, nor wishes to care for. The applicable authority, both at the time of abandonment as well as at the time this action was filed, is found at section 359.34. It states:

359.34 **Scope of levy.** The levy authorized in sections 359.30 and 359.33 may be extended to property within the limits of any city so far as same is situated within the township, unless such city is already maintaining a cemetery, or has levied a tax in support thereof. The said tax may be so expended for the support and maintenance of any such cemetery after the same has been abandoned and is no longer used for the purpose of interring the dead.

We find no language in this section that imposes a duty upon a township to expend money or effort in maintaining a cemetery that has been abandoned and is no longer used for the purpose of interring the dead. We conclude therefore that the district court was correct in dismissing the writ of mandamus seeking to compel the township to restore and maintain the entire Dearinger Cemetery.

■ Plaintiffs also challenged on appeal, the district court's determination that title to the acre of cemetery land should be quieted in defendant Van Wyk. We affirm that decision but note that its decision was premised upon the initial determination that the cemetery was still a private cemetery when the 1962 quit claim deed was executed. Because we have found that the dedication was completed, and that the township therefore owned the cemetery, we necessarily conclude that title was appropriately transferred via the quit claim deed.

Although we have concurred with the district court that defendant Van Wyk owned the land by virtue of the 1962 transaction, that determination does not necessarily determine all of the parties' rights. These mandamus and declaratory judgment actions were tried in equity. Therefore our review is de novo. Iowa R.App.P. 4. And we have the power to separately "determine all questions material or necessary to accomplish full and complete justice between the parties, even though in doing so it may be required to pass upon some matter ordinarily cognizable at law." *Moser v. Thorp Sales Corp.*, 312 N.W.2d 881, 895 (Iowa 1981). A prayer for general equitable relief, such as in a quiet title action, "is to be construed liberally, and will often justify granting relief in addition to that contained in the specific prayer, provided it fairly conforms to the case made by the petition and the evidence." *Id.*

When Van Wyk acquired title to the entire acre in 1962, he and the township fenced off and set aside the graves of Jacob Dearinger and a woman, presumably his wife. Both defendants therefore acknowledged plaintiff's right to keep the graves and the markers there. It wasn't until approximately 1983, when defendants obtained permission from Martin Dearinger to move the stones, that plaintiffs complained and eventually filed this action. We perceive therefore, plaintiffs' paramount concern is keeping the remaining two graves at their original place. Thus, we are confronted with the issue of whether these plaintiffs can prevent Van Wyk from removing the graves and markers. We conclude they can.

While we agree with the trial court that, technically speaking, plaintiffs possess only a privilege or license in these few feet of ground, the law in Iowa jealously protects this special interest. *See Thompson v. Deeds*, 93 Iowa 228, 61 N.W. 842 (1895); *Anderson v. Acheson*, 132 Iowa 744, 110 N.W. 335 (1907); *King v. Frame*, 204 Iowa 1074, 216 N.W. 630 (1924). We have found that the opinion and the facts of *Anderson v. Acheson*, 132 Iowa 744, 110 N.W. 335 (1907), are dispositive of this issue and therefore take the liberty of quoting it at length:

> The rights of one to the burial place of his dead, in the absence of fee to the soil or right to the exclusive possession thereof, in respect to the maintenance of a civil action for its disturbance, is one of delicate, but not very satisfactory, solution. Because of the respect entertained for the final resting place of the dead, and so little temptation to disturb their repose, disturbances of the same have rarely become the subject of litigation. The adjudications have been sufficient, however, to establish the principle that where one is permitted to bury his dead in a public cemetery, even though this be by license or privilege, he acquires such a possession of the spot of ground in which the bodies are buried as will entitle him to maintain an action against the owners of the fee or strangers, who without

> right so to do disturb it.... In *Jacobus v. Congregation, supra*, it was held that where the purchaser of a lot continues in possession of such until his death, possession is transmitted to his heirs, and this rule was recognized in *Gardner v. Swan Point Cemetery*, 20 R.I. 646 (40 Atl. 871, 78 Am.St.Rep. 897). The nature of the interest in and the use to which a burial lot is put is such that this should be declared the rule.

> \* \* \* \* \* \*

> The ground is acquired for the purposes of the sepulcher, not only of the purchaser, but of his family as well, and after these have been laid at rest the sentiment of their descendants may be relied upon to guard the last resting place of their dead as hallowed ground. The license or privilege continues so long as the land is used as a cemetery. A cemetery has been declared not to be the subject of partition. *Brown v. Lutheran Church*, 23 Pa. 495.... The sentiment is sound, and has the sanction of mankind in all ages, which regards the resting place of the dead as hallowed ground, not subject to the laws of ordinary property, nor liable to be devoted to common uses.

> \* \* \* \* \* \*

> The peculiar use to which such property is dedicated, and the sentiment of sanctity with which mankind regard the burial place of the dead furnish ample reason for declining to apply to it the ordinary rules of ownership and devolution. The principle of all the cases, as said in *Gardner v. Swan Point Cemetery*, seems to be that the buried body shall remain undisturbed, and that the right and duty falls to the next of kin to see that its repose is duly protected.

*Id.* at 755, 56, 58, 110 N.W. 335.

Additionally, we note the language of the supreme court in *King v. Frame*, 204 Iowa 1074, 1079, 216 N.W. 630 (1927), when it said, "a due respect for the memory of the dead and for the feelings of the living friends and relatives requires that, when a

body is once interred, it shall so remain, unless extreme necessity demands its disinterment." We find in the record no extreme necessity that would justify turning a deaf ear to the strenuous objections of plaintiffs over the disinterment of their ancestors. We also conclude, as did the supreme court in *Acheson*, that the permission of one member of the family to move the stones is no defense to defendants' actions. *See*, 132 Iowa at 760, 110 N.W. 335.

Because we find the township had no duty to maintain the cemetery, we affirm the trial court's dismissal of the mandamus action. Because we also find that title to the cemetery should be quieted in defendant Van Wyk, we also affirm that portion of the lower court's judgment. But because we hold plaintiffs' are entitled to keep their ancestors' plots at their original spot, we modify the holding and remand with directions to require defendants to restore the plots of Jacob Dearinger and his companion to the condition as they existed in 1962 when the fence originally surrounded them.

AFFIRMED AS MODIFIED; REMANDED WITH DIRECTIONS.