**STATE of Iowa ex rel. ATTORNEY GENERAL OF IOWA,**
Appellee,

v.

**Kell C. TERRY d/b/a Dubuque Memorial Gardens and Dubuque Memorial Park, Individually and in his corporate capacity, et al., Defendants,**

**and**

**Table Mound Township, Appellant.**

No. 94–1942.

Supreme Court of Iowa.

Dec. 20, 1995.

Ralph R. Potter, Assistant County Attorney, Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Chris Odell, Assistant Attorney General, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, ANDREASEN, and TERNUS, JJ.

McGIVERIN, Chief Justice.

We are called upon to interpret Iowa Code section 566.33 (1993) concerning a governmental subdivision's responsibility for a cemetery, privately-owned and devoted to public use, presently under a receivership and being maintained by volunteers. We affirm the district court's declaratory judgment order under that statute directing a township to provide maintenance for the cemetery, but limit the township's obligation to the funds available through appropriate tax levies. We reverse, however, the court's order directing the township to preserve the cemetery's burial records because a receivership exists at present to perform that duty.

I. *Background facts and proceedings.* Dubuque Memorial Gardens (cemetery) is a privately-owned, perpetual care cemetery devoted to public use located in Table Mound Township (township), Dubuque County. The cemetery is 15 acres in size and consists of five divisions or gardens. The cemetery houses 11,276 burial lots, of which approximately 1,082 are occupied, 1,550 are sold but unoccupied, and 8,644 remain unsold. Each of the cemetery's five gardens contains occupied burial lots as well as lots that have been sold but not yet occupied. The cemetery has held public burials since 1953 and the cemetery continually has visitors, especially on Memorial Day and Veterans Day. At the

time of trial, the cemetery's most recent burial had been held on September 2, 1994.

In 1990, the current owner of the cemetery, Kell Terry, acquired the cemetery from Donald Leopard. At various times between 1987 and 1992, Leopard has owned and/or managed the cemetery.[1]

Since 1991, Terry had taken an active role in the management, operation, direction and control of the cemetery. In December 1991, Terry appointed himself receiver of the cemetery's perpetual care and maintenance trust fund.[2] In 1992, Terry represented himself to the Iowa insurance division as the sole owner of the cemetery.

In February 1993, the Iowa insurance division issued a cease and desist order against Dubuque Memorial Gardens, Inc., and Terry for certain statutory trust violations. Terry admitted the alleged statutory violations and signed an agreement with the Iowa attorney general and the Iowa insurance commissioner to appoint Dian Bradbery, a cemetery employee, as supervisor of the financial operations of the cemetery for the purpose of escrowing monies received by the cemetery and depositing trust funds as required by law. Bradbery was, however, unable to transfer escrowed funds into trust because the cemetery did not have and was not generating any non-trustable income to pay for the cost of setting up the trusts.

In June 1993, the State filed a petition in equity against several defendants, who allegedly had ownership or lien interests concerning the cemetery, requesting a receiver be appointed for the cemetery, requesting a trustee be appointed to handle the cemetery's trust funds, and seeking other temporary and injunctive relief.[3] It was the State's

---

1. The State asserts Leopard does not have a current interest in the cemetery but is believed to be one of the persons responsible for the removal of perpetual care trust funds from the State in 1991. In 1967, Dubuque Memorial Gardens, Inc. established an irrevocable trust for the perpetual care and maintenance of the cemetery. *See* Iowa Code § 566A.6. The trust had a balance of approximately $54,000 in 1987; in the fall of 1991, when Terry became the trustee of the trust, the fund had a balance of approximately $64,000.

2. Terry was the president and sole stockholder of the Dubuque Memorial Gardens, Inc., a corpora-

tion that was administratively dissolved in 1988. The corporation was a wholly-owned subsidiary of KCT Management Co., Inc., a corporation of which Terry was the president and owner and one which has managed and operated the cemetery since September 1991. The corporation was a named party in the State's original petition for appointment of a receiver and trustee and the cemetery has continued to operate under that name.

3. In a separate petition, the State alleged Terry had the cemetery's trust funds transferred into a personal checking account designated the "Don-

hope that continued operation of the cemetery under a receivership for a short period of time would help stabilize the cemetery's operation and provide an opportunity for a buyer to be located.

The State contended that, since May 1993, the cemetery's private owners have effectively abandoned the property. There are liens in excess of $80,000 against the cemetery property. The cemetery's telephones have been disconnected, the cemetery has been unable to pay operating expenses, and foreclosure decrees have been entered against the real estate. At the present time, volunteers maintain the cemetery grounds and the cemetery relies on the cemetery's prior local manager, Dian Bradbery, age sixty-one, to open mail, deposit funds, coordinate burials, and preserve and maintain nearly fourteen different sets of burial records.[4]

Pursuant to the State's petition, the district court appointed a temporary receiver, Bradbery, to operate the cemetery under the supervision and funding of the Iowa insurance division. The cemetery's receiver has various duties including the upkeep of burial records and the arrangement of upcoming burials. As receiver, Bradbery is compensated $200 per month. The receiver's duties, however, did not include cemetery maintenance functions.

II. *The present action.* In March 1994, the State amended its original petition to add Table Mound Township, a political subdivision of Dubuque County, as a defendant. In its amended petition, the State sought declar-

atory relief claiming the township had a statutory obligation to preserve and protect the physical integrity of the burial site and burial records of the cemetery pursuant to Iowa Code section 566.33.[5] The township answered the State's request for declaratory relief, denying it had any such statutory obligation.

In September 1994, the district court held an evidentiary hearing on the State's request for declaratory relief. A supervisor of the regulated industries unit of the Iowa insurance division testified that funds used to finance the receivership would most likely run out sometime within the next year. Also, the evidence showed that the insurance division contacted both the state department of natural resources and the county of Dubuque in regard to helping out with the upkeep of the cemetery grounds, but each declined to provide assistance without compensation.

After the hearing, the court issued an order interpreting Iowa Code section 566.33 and declaring the legal rights of the parties concerning the preservation of burial records and maintenance of the cemetery grounds. In its order, the court concluded:

> IT IS THEREFORE ORDERED that Count IV of the State's amended petition is granted in that Table Mound Township has the duty to preserve and maintain Dubuque Memorial Gardens. It is further declared that the township's duty includes the upkeep of the cemetery grounds and the preservation of the burial records.[6]

---

ald L. Leopard Trust Account" located in Texas, and, despite two court orders to do so, Terry failed to account for the funds.

**4.** When Bradbery first began working at the cemetery in 1988, the cemetery owners employed three full-time and two part-time workers to maintain the cemetery grounds during the summer months.

**5.** In its petition for declaratory relief, the State claimed the actual controversy between the State, Dubuque County, and the township concerns the statutory obligation of the county and/or township to preserve, protect, and maintain the burial site *when the receivership ended.* The State went on to request, however, that the court order the county and township to preserve, protect, and maintain the burial site *before the receivership terminated.* Under the original re-

ceivership order, the receiver had a duty to preserve and protect burial records but not to maintain the cemetery grounds.

**6.** The court did not declare whether Dubuque County has any legal obligation in coordination with the township under Iowa Code section 566.33 to preserve, protect, and maintain the burial site at issue. An attorney general opinion interpreting Iowa Code section 566.33 with section 359.33 concluded townships, not counties, bear the primary responsibility for the establishment, improvement, and maintenance of public cemeteries. 1991 Op.Iowa Att'y Gen. 91–10–1(L). However, a county is authorized to levy a tax within a township at a rate not to exceed the township's maximum taxable rate permitted under section 359.33 *if* the township officials fail to levy the tax as needed. *See* Iowa Code §§ 331.402(2)(c), 331.301(7).

In overruling defendant township's post-trial motion under Iowa Rule of Civil Procedure 179(b), the court also stated:

This Court did not declare that Table Mound Township has an ownership duty or must operate the cemetery as an ongoing business, sell lots, or conduct burial services.

Defendant township appealed. Whether the district court's interpretation of section 566.33 was correct is the only issue presented for our review.

■ III. *Standard of review.* The legal or equitable nature of a declaratory judgment action, *see* Iowa R.Civ.P. 261, is to be determined by the pleadings, the relief sought, and the nature of the case. *Brammer v. Allied Mut. Ins. Co.*, 182 N.W.2d 169, 172 (Iowa 1970).

■ The State contends the standard of review is for correction of errors at law. However, the State never objected before the district court to the action proceeding in equity. *See Brammer,* 182 N.W.2d at 172 (stating if an action was tried without objection as at law or in equity, we treat the action on appeal as it was treated in the district court); *see also Davis–Eisenhart Mktg. Co. v. Baysden,* 539 N.W.2d 140, 142 (Iowa 1995) ("[W]e will hear a case on appeal in the same manner in which it was tried in the district court."). Therefore, we review de novo a declaratory judgment action tried as an equitable proceeding, such as the present case. *Northern Natural Gas Co. v. Forst,* 205 N.W.2d 692, 694 (Iowa 1973); *see* Iowa R.App.P. 4.

■ IV. *Interpretation of Iowa Code section 566.33.* In its declaratory judgment ruling the district court ordered the defendant township, pursuant to Iowa Code section 566.33, to do two things: (1) maintain the cemetery grounds; and (2) preserve the cemetery's burial records. A declaratory judgment has no greater force than the issues it decides. *Sayles v. Bennett Ave. Dev. Corp.,* 258 Iowa 628, 634, 138 N.W.2d 895, 898 (1965).

■ Our sole question under the present record is whether the township has the statutory obligations assigned to it by the district court. Three Iowa Code sections are relevant with respect to governmental subdivisions maintaining and financing the maintenance of neglected cemeteries. Iowa Code section 566.33 states:

A governmental subdivision or agency having a burial site within its jurisdiction, for which protection or preservation is not otherwise provided, shall *preserve and protect* the burial site as necessary to restore or *maintain its physical integrity* as a burial site. The governmental subdivision or agency may enter into an agreement with a public or private organization interested in historical preservation to delegate to the organization the responsibility for the protection and preservation of the burial site.

(Emphasis added.) Iowa Code section 359.33 provides:

[Township trustees] may levy a tax not to exceed six and three-fourths cents per thousand dollars of assessed value of taxable property to *improve and maintain* any cemetery not owned by the township, provided the same is devoted to general public use.

(Emphasis added.) Lastly, Iowa Code section 331.402(2)(c) provides:

[A county board of supervisors] may:

. . . .

(c) Levy within a township at a rate not to exceed the rate permitted under sections 359.30 and 359.33 for the *care and maintenance* of cemeteries, if the township officials fail to levy the tax as needed.

(Emphasis added.) Statutes dealing with the same subject matter are considered together and must be harmonized in light of their common purpose. *Metier v. Cooper Transport Co.,* 378 N.W.2d 907, 912 (Iowa 1985); *Messina v. Iowa Dep't of Job Serv.,* 341 N.W.2d 52, 56 (Iowa 1983).

Initially, we agree with the district court that Table Mound Township is a subdivision of Dubuque County, *see* Iowa Code § 359.1, and that any governmental subdivision or agency is potentially subject to the provisions of Iowa Code section 566.33. Under Iowa Code chapter 359, townships have broad stat-

utory powers to establish, improve, condemn and levy taxes for maintenance of cemeteries. *See* Iowa Code §§ 359.28–359.41. Counties have corresponding backup tax levying powers to maintain cemeteries. *See id.* §§ 331.402(2)(c), 331.301(7). Additionally, the cemetery here is indisputedly within the township's jurisdiction.

A. *Upkeep of the cemetery grounds.* The district court ordered the township to maintain the cemetery grounds. To determine whether this order was properly authorized by section 566.33, we must interpret the following language from the statute: "... for which protection or preservation is not otherwise provided" and "... *shall preserve and protect* the burial site as necessary to *restore or maintain its physical integrity* as a burial site." Iowa Code § 566.33 (emphasis added).

Section 566.33, as originally proposed in the legislature, provided:

A governmental subdivision or agency having a burial site within its jurisdiction, for which protection or preservation is not otherwise provided, shall provide for the protection and preservation of the burial site.

S.F. 120, 71 G.A., 1st Sess. § 3 (Iowa 1985). At this initial stage of the legislation, the duty imposed on governmental subdivisions to maintain cemeteries not otherwise provided for was arguably passive in nature. The section was later amended and passed the Senate in March 1985 with the "maintain" and "physical integrity" language that appears in Iowa Code section 566.33. Significantly, section 566.33, as finally enacted, included the active language emphasized above which directs the governmental subdivision to do more than just protect and preserve certain burial sites. The statute, as enacted, imposed an active duty on governmental subdivisions to *maintain* the *physical integrity* of certain burial sites. *See* Iowa Code § 566.33. It is our duty to interpret what the legislature intended by the emphasized words, and whether upkeep of cemetery grounds falls within the meaning of the statute.

The word "shall" imposes a duty, *see id.* § 4.1(30)(a), on the governmental subdivision or agency that has jurisdiction over the cem-

etery. A duty, however, does not exist until it can be first established that the duty sought to be imposed, such as upkeep of cemetery grounds, is not otherwise provided. *See id.* § 566.33.

■ With respect to the State's request for the court to impose a duty on the township to maintain the cemetery grounds, we conclude, first, that upkeep is something that from a legal obligation standpoint is "not otherwise provided." The present owners of the cemetery, Terry and other defendants, are not maintaining the cemetery grounds and Terry is believed to be in Texas. Currently, upkeep of the cemetery grounds is being provided for by Dian Bradbery and other volunteers arranged by her. Bradbery and the other volunteers are under no legal obligation, including the receivership order, to maintain the grounds. In addition, neither Bradbery nor the other volunteers are being compensated by any source for their efforts in maintaining the cemetery grounds. There are no trust or receivership funds to pay for such upkeep.

■ Second, we conclude upkeep of the cemetery grounds is clearly necessary to "maintain" the cemetery's "physical integrity." *See* Iowa Code § 566.33. Our Code does not define "maintain" with respect to cemetery care. Generally, "maintain" means "to continue" or "carry on" or "to preserve or keep in a given existing condition." The American Heritage Dictionary 757 (2d ed. 1985); *see* Black's Law Dictionary 953 (6th ed. 1990) (defining "maintain" as "acts of repairs and other acts to prevent a decline, lapse or cessation from existing state or condition; bear the expense of; ... keep up; preserve...."). The Internal Revenue Service defines "care and maintenance" of cemeteries for federal tax purposes as follows:

[C]are and maintenance of gravesites may include the upkeep, repair and preservation of those portions of cemetery property in which gravesites ... have been sold; including gardening, road maintenance, water line and drain repair and other activities reasonably necessary to the preservation of cemetery property.

26 C.F.R. § 1.642(i)–2(d) (1995).

■ Undefined words in a statute are to be given their plain and ordinary meaning,

*see In re Estate of Millers,* 159 N.W.2d 441, 443 (Iowa 1968), and, thus, the word "maintain" necessarily includes the active upkeep of the cemetery grounds. Our rules of statutory construction require this conclusion. *See id.* (when interpreting the meaning of a statute, courts are required to interpret the language fairly and sensibly in accordance with the plain meaning of the words used by the legislature); *In re Estate of Allgood,* 509 N.W.2d 486, 487 (Iowa 1993) (when a statute is clear, the court need look no further than to the express terms of the statute); *see also* Iowa Code § 4.4(3) (stating a "just and reasonable result" is intended to follow a statute's enactment). Without maintaining the cemetery grounds, the cemetery would not be preserved in its current condition as kept by Bradbery and her volunteers. The nature of the cemetery, with all headstones flush with the ground, requires the grounds to be mowed and trimmed in order to preserve grave sites from being overgrown and lost.

Also, we believe that maintenance of cemetery grounds is important because burial plot owners have certain rights stemming from such ownership, such as the right to access the plots and decorate grave sites. *See Chariton Cemetery Co. v. Chariton Granite Works,* 197 Iowa 403, 406–07, 197 N.W. 457, 458–59 (1924); *see also* Robert S. Fiffer & Stephen L. Berger, Ownership of Cemetery Property, *in* 1 *Cemetery Business & Legal Guide,* No. 9, at 8 (Robert S. Fiffer & Harvey I. Lapin eds., 1973). Relatives of the deceased also have a right to visit and decorate the grave of the deceased, *see Thompson v. Deeds,* 93 Iowa 228, 232, 61 N.W. 842, 843 (1895), and, therefore, maintaining the cemetery grounds is essential to assure those rights are not infringed.

The township contends that maintaining the physical integrity of a burial site does not require active maintenance of the cemetery grounds, but rather only implementation of preventative measures to guard against vandalism of and other improper interference with the sacred grounds. We do not believe that the legislature intended such a narrow interpretation of the phrases "maintain" and "physical integrity." The second sentence of section 566.33 allows defendant township to contract with historical organizations for such protection and preservation of the burial site; that ordinarily would not be done concerning a passive duty. Thus, we believe the legislature did not intend in Iowa Code section 566.33 that a governmental subdivision need only play a "passive role," to prevent disturbance of the cemetery, as urged by the township.

■ Currently, burials continue to take place at the cemetery under the receivership order and relatives and friends continue to visit their deceased loved ones at the cemetery. The cemetery is clearly not "abandoned" in statutory terms or in the sense that the property is overgrown and no one visits the dead. *See* Iowa Code §§ 566.20–566.27 (treatment of abandoned cemeteries). Although the district court stated the owners effectively abandoned the cemetery in 1993, Bradbery and her volunteers have, to date, adequately maintained the cemetery's status quo, including its physical integrity. The current volunteer efforts, however, cannot continue indefinitely and the volunteers obviously have no legal obligation to continue the maintenance that they are presently providing.

■ The cemetery's past and present owners have sold approximately 1,550 lots that are presently unoccupied, and the statute contemplates upkeep of the cemetery grounds as important to preserve, protect and maintain the physical integrity of the burial site. Therefore, until upkeep of the cemetery grounds is otherwise provided, we agree with the district court that, under the facts of the present record, Iowa Code section 566.33 imposes a duty on the township to maintain the burial site grounds. *See* 1991 Op. Iowa Att'y Gen. 91–10–1(L) (stating "[t]ownships have statutory authority to fund cemetery care activities both within and without the township"). The township, however, has no duty to finance or provide maintenance services in excess of the funds available to the township through appropriate cemetery maintenance tax levies.[7]

---

7. Table Mound Township has the power to levy a tax to finance the maintenance of cemeteries not

We believe our interpretation of Iowa Code section 566.33 is consistent with our court's longstanding view that government has a role in ensuring that the resting place of the dead is respected and preserved as a consecrated ground. *See, e.g., King v. Frame,* 204 Iowa 1074, 1078–79, 216 N.W. 630, 632–33 (1927); *Carter v. Town of Avoca,* 197 Iowa 670, 673, 197 N.W. 897, 898 (1924); *Anderson v. Acheson,* 132 Iowa 744, 749, 110 N.W. 335, 337 (1907).

Defendant township also contends that *Dearinger v. Peery,* 387 N.W.2d 367 (Iowa App.1986), is authority to support its position that the township has no duty to maintain the cemetery grounds. In *Dearinger,* the descendants of a decedent contended a township had the duty under Iowa Code chapter 359 (1983) to maintain an abandoned and neglected one-acre cemetery in which the decedent was buried. *Id.* at 369. Our court of appeals ruled that the township had no duty to maintain the cemetery grounds, *id.* at 373, under either Iowa Code section 359.34 or 359.37. *Id.* at 370–71.

We first note that, unlike *Dearinger,* the present case does not involve maintenance of an "abandoned" cemetery. *See* Iowa Code §§ 566.20–566.27. Secondly, after the *Dearinger* decision was filed, the legislature enacted Iowa Code sections 566.31–566.34, effective July 1, 1986. Section 566.33 was a part of that enactment, and the *Dearinger* decision may have been a catalyst for the enactment of that legislation. *See* 1986 Op. Iowa Att'y Gen. 86–11–2 (briefly discussing the legislature's response to the *Dearinger* decision).

Because section 566.33 was not in effect when *Dearinger* was decided, we believe the *Dearinger* decision has no bearing on our present interpretation of the statute. On the contrary, we believe it more likely that the legislative intent in section 566.33 was to

remedy the situation that existed under the facts of *Dearinger.*

■ B. *Preservation of the cemetery's burial records.* In addition to ordering the township to maintain the cemetery grounds, the district court also ordered the township, pursuant to Iowa Code section 566.33, to preserve the cemetery's burial records. The township contends that order was contrary to what the legislature must have intended when it enacted section 566.33. The township argues the intent of the legislature was not to make the townships of this state become the perpetual care and bookkeeping insurers of failed cemeteries. We agree that the order to preserve the cemetery's burial records in this case was made in error, but not for the policy reasons stated by the township.

In order to determine whether the township has a duty to preserve the cemetery's burial records under Iowa Code section 566.33, we must again interpret, as above concerning maintenance of the cemetery grounds, the following language from the statute: "... for which *protection or preservation is not otherwise provided"* and "... *shall preserve and protect* the burial site as necessary to *restore or maintain its physical integrity* as a burial site." (Emphasis added.)

At the time of the district court's declaratory judgment ruling in September 1994, the receiver, Bradbery, already had the legal duty to preserve and protect burial records. This obligation arose pursuant to the June 1993 district court order in which the court appointed a receiver and trustee for the cemetery. Under section 566.33, the district court only has the authority to order the township to perform a duty "for which protection or preservation is not otherwise provided." *See* Iowa Code § 566.33. Because the court-appointed receiver already has the legal duty to preserve the burial records,

---

owned by the township but devoted to general public use, such as the cemetery in the present case. *See* Iowa Code § 359.33. The township can also accept gifts to finance the maintenance of the cemetery, *see id.* § 359.29, and may contract with historical organizations to handle the protection and preservation of the cemetery. *See id.* § 566.33. If the township officials fail to levy

the tax as needed for the *care and maintenance* of the cemetery, the Dubuque County board of supervisors may levy such a tax. *See id.* § 331.402(2)(c); *see also id.* § 35B.17 (statute requiring county board of supervisors to appropriate and pay monies sufficient for the *care and maintenance* of certain veterans' grave sites when care is not otherwise provided).

their protection and preservation is already provided for.

Therefore, we conclude the district court erred when it ordered the township to preserve the cemetery's burial records *prior to* the termination of the receivership. Thus, we need not address whether preservation of burial records is necessary to preserve, protect, or maintain the physical integrity of the burial site. *See* Iowa Code § 566.33.

V. *Disposition.* We affirm the district court's declaratory judgment order directing that the township has the duty to maintain the cemetery burial grounds because maintenance is not otherwise legally provided for; such maintenance duty is, however, limited to the funds available through appropriate township tax levies for that purpose. We reverse the district court's order directing the township to preserve burial records because the receivership presently provides for their preservation.

**AFFIRMED IN PART AND REVERSED IN PART.**

All justices concur except TERNUS, J., who concurs specially in division IV(B).

TERNUS, Justice (concurring specially).

I concur in the majority opinion except in division IVB which reversed the district court's decision ordering the township to preserve the cemetery's fourteen different sets of burial records. I concur specially in that division because I disagree with the basis for the majority's reversal.

The majority concludes that the court's order concerning the burial records is erroneous because the receivership currently has the obligation to preserve and protect these records; therefore, section 566.33 does not apply. *See* Iowa Code § 566.33 (1993) (imposing duty on township where "protection and preservation is not otherwise provided"). I believe that the district court was incorrect in imposing a duty on the township to preserve the cemetery's records for an even more fundamental reason: section 566.33 does not provide for such a duty under any circumstances. Section 566.33 requires a governmental subdivision to "preserve and protect *the burial site.*" (Emphasis added.)

I know of no common definition of "burial site" that includes records pertaining to the site. *See* Webster's Collegiate Dictionary 1097 (10th ed. 1993) (defining "site" as "the spatial location of an actual or planned structure or set of structures").

Nor are the burial records necessary to preserve the site's "physical integrity," a possible interpretation of the statute implied by the majority. Obviously accurate and complete records make it easier to locate specific graves within the site. However, I do not believe the legislature intended by enacting section 566.33 to compel that a township virtually *operate* a defunct cemetery within its boundaries; the only duty imposed is to maintain the *"physical* integrity" of the cemetery. This duty can be accomplished without the additional burden on the township to maintain extensive cemetery records. I would reverse on this basis.